## CITY OF DERBY *v.* WATER RESOURCES COMMISSION

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued June 9—decided July 18, 1961

*John J. O'Connell,* for the appellant (plaintiff).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, C. J.    The plaintiff appealed to the Superior Court from an order of the state water commission. The matter was referred by the court to a committee. This is an appeal from a judgment entered on the acceptance of the committee's report. Practice Book § 177.    The plaintiff did not file a motion to correct the report; id. § 171; or exceptions to its acceptance. Id. §§ 174, 175. It did not seek to have included in the report any claims of law made before the committee, as it could have done under Practice Book § 171.   As a result, the

proper foundation for attacking the report of the committee was never laid. The case, however, involves a matter of great public interest and we will consider the claims made in the plaintiff's brief in this court. *State Water Commission* v. *Norwich,* 141 Conn. 442, 444, 107 A.2d 270.

The committee's finding concerning the proceedings in this matter may be stated in summary as follows: During 1956, the plaintiff, a municipal corporation, was discharging daily into the Naugatuck and Housatonic Rivers, through its sewage system, a million gallons of untreated sewage. On July 10, 1956, the state water commission cited the plaintiff to appear before it on August 1 and show cause why an order should not issue regulating this pollution. See Rev. 1949, § 4042 (General Statutes § 25-20). The hearing was postponed at the plaintiff's request until August 29. On that day, the plaintiff appeared by its mayor and corporation counsel, with witnesses. The hearing was conducted by Herman P. Kopplemann, chairman of the commission, and Edward J. McDonough, a member, with William S. Wise, director of the commission, in attendance. See Rev. 1949, § 4041 (as amended, General Statutes §§ 25-1, 25-2). After the hearing, the commission found that the plaintiff was "polluting the waters of the State within the meaning of the word 'pollution' as defined" in § 4040 of the 1949 Revision (as amended, General Statutes § 25-19) and ordered the plaintiff to submit, by July 1, 1957, to the commission and the state department of health, for approval, "detailed plans and specifications covering an adequate system of collection and treatment for the sewage now discharged" into the Naugatuck and Housatonic Rivers; to advertise, by September 1, 1957, for bids for the construction of the approved

collection and treatment works; and to complete the construction of the works by March 1, 1959. See Cum. Sup. 1955, § 2114d (as amended, General Statutes § 25-21). An alternative order was also made. This order, in effect, allowed the plaintiff, if it chose to use some other system or means of abating the pollution, to notify the commission of its decision, by January 15, 1957, and to submit for approval "a program schedule setting forth the time and dates when the various parts of such system and program might be carried out and the proposed system constructed and placed in operation." The alternative order provided further that the plaintiff should submit a statement showing the various steps it had taken to promote such a program, with assurances that the plaintiff would "strive to carry the program to its conclusion," and that upon the submission of the plaintiff's decision and program schedule to the commission, it would "take such further action as . . . necessary to carry out a program for installing the necessary sewage collection and treatment works." The plaintiff took the present appeal from the order of the commission. See Rev. 1949, § 4044 (General Statutes § 25-22).

The state water commission in 1927 began its efforts to have the plaintiff reduce its pollution of the Naugatuck and Housatonic Rivers. Since that time, the commission has issued three orders to the plaintiff to take the steps necessary to this end, but no effective action has been taken by the plaintiff and for various reasons none of the orders has been enforced. A hearing was held in Ansonia in October, 1949, and was attended by the mayors of the plaintiff and of the cities of Ansonia and Shelton, neighboring communities which were also discharg-

ing sewage into the rivers. The construction of a so-called "tri-city" system was discussed, but no effective action was taken. In July, 1951, the commission issued orders requiring the construction of sewage treatment plants for Derby, Shelton and Ansonia by December 31, 1952. On August 2, 1951, the three cities requested an extension of time, which the commission granted. The cities employed engineers, who recommended the construction of a single sewage disposal plant, to serve all three cities, as the most economical solution of their sewage disposal problems. A referendum was held in each of the three cities and a majority of those voting in each city favored the "tri-city" plan. No action thereafter being taken by the plaintiff or by Shelton or Ansonia, the commission ordered a hearing on July 13, 1955. This hearing consumed two days. It was conducted by Herman P. Kopplemann, as chairman of the commission, and John P. Leonard, as a member. George C. Waldo, the third member of the commission, was absent because of illness. The commission took no action because Commissioner Leonard died before any order could be issued. Edward J. McDonough was appointed to fill the vacancy. The commission then proceeded against the plaintiff separately, held the hearing of August 29, 1956, and issued the order hereinbefore described. The plaintiff agreed that the testimony taken at the hearing of July 13 and 14, 1955, so far as it applied to the plaintiff, could be considered by the commission at its hearing of August 29, 1956, and that Commissioner McDonough, who had succeeded Commissioner Leonard, could examine the testimony and the exhibits offered at the hearing of July 13 and 14, 1955, and consider the matter on that evidence.

Before we conclude this recital of the extended proceedings, we take notice of the prologue to the committee's report, wherein it appears that this appeal, as well as the appeals of Ansonia and Shelton from like orders, was referred to the committee in October, 1957; that the committee was unable to arrange a time when all the counsel involved would agree to be present at a joint hearing of the three appeals, which raised almost identical issues; that the committee thereafter, in May, 1958, returned the file to the court; that the appeals were again referred to the same committee in September, 1959; and that hearings were finally held in February, 1960. The plaintiff's officials had plenty of time to prepare for what might eventuate.

The plaintiff claims that the order is invalid because Commissioner McDonough did not see and hear the witnesses who testified at the hearing of July 13 and 14, 1955, and therefore could not participate as a commissioner in issuing the order which followed the hearing of August 29, 1956. For aught that appears of record, this is the first time that the plaintiff has challenged the capacity of Commissioner McDonough to participate in the hearing of August 29, 1956, and the issuance of the order. That aside, the plaintiff agreed that he could consider the evidence relating to the plaintiff which was offered at the hearing of July 13 and 14, 1955. He apparently did so, as agreed, and acted on it as a member of the commission. That the commission acted in accordance with the plaintiff's stipulation was neither a denial of due process nor violative of what are now §§ 25-20 and 25-21 of the General Statutes. 42 Am. Jur. 484, § 141; note, 18 A.L.R.2d 606, 613; see *Eastland Co.* v. *Federal Communications Commission,* 92 F.2d 467, 469, cert. denied, 302

U.S. 735, 58 S. Ct. 120, 82 L. Ed. 568; *Shung* v. *Brownell*, 207 F.2d 132, 133, vacated, 346 U.S. 906, 74 S. Ct. 237, 98 L. Ed. 405; *Vogeley v. Detroit Lumber Co.*, 196 Mich. 516, 520, 162 N.W. 975; *Solar Electric Co.* v. *Public Service Commission*, 88 Pa. Super. 495, 499. Moreover, the evidence heard by the commission on August 29, 1956, independent of the 1955 hearing, furnishes ample support for the finding and order. The case of *Watson* v. *Howard*, 138 Conn. 464, 86 A.2d 67, relied on by the plaintiff, is clearly distinguishable on its facts. The plaintiff's claim is without merit.

The plaintiff asserts that the commission's order is unrealistic in view of the financial condition of the plaintiff. It is true that the estimated cost of the work, as found by the committee, plus the present outstanding bonded indebtedness of the plaintiff would exceed the 8 per cent limit on bonded indebtedness prescribed by General Statutes § 7-374 (b), but it would not do so by an amount so large that funds could not be provided by taxation. This court cannot advise the city how to proceed, but it can take notice of chapter 103 of the General Statutes, which provides for the issuance of revenue bonds to defray the cost of municipal sewerage systems. It can also take judicial notice of the availability of federal funds to help defray the cost of other municipal needs, such as school construction and redevelopment, for which the plaintiff urges priority. Public health cannot be endangered because of a reluctance on the part of municipal authorities to face up to a city's problems and find available means of coping with them. The claim that the order is unrealistic for financial reasons fails.

The General Assembly enacted legislation in 1957 which transferred the powers and duties of the

state water commission to the water resources commission. Public Acts 1957, No. 364, §§ 1, 2; see General Statutes § 25-1. By virtue of this legislation, the water resources commission became the successor to the state water commission and the defendant in this action. Rev. 1949, § 278 (General Statutes § 4-38). Under General Statutes § 25-3 (c), the water resources commission has the power to establish, on waterways under consideration for flood control, lines beyond which "no obstruction or encroachment shall be placed . . . unless specifically authorized by the commission." See *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 653, 153 A.2d 822. The plaintiff claims that it cannot comply with the commission's order until these lines on the Housatonic and Naugatuck Rivers within the plaintiff city have been established. The plaintiff, like other communities in the Housatonic and Naugatuck valleys, was partly inundated by floods in August, 1955. It is true that if the proposed sewage disposal plant is to be erected within an area subject to possible flooding, the encroachment lines should be fixed before a final site for the plant is determined. The committee so found but nevertheless concluded that the order of the commission was reasonable. The trial court sustained that conclusion in accepting the committee's report. There is nothing unreasonable or improper in this conclusion. The order of the commission made adequate provision for the very contingency which the plaintiff now urges as a reason for its noncompliance. The commission must approve the plans submitted under any order, and obviously it could not act on them unless it first established the encroachment lines. This claim of the plaintiff does not excuse its failure to take any action.

592

The trial court ordered the plaintiff to submit, by June 1, 1961, to the water resources commission detailed plans and specifications for an adequate sewage treatment plant. The effect of what the court did was to modify the first paragraph of the order of the commission by postponing the date fixed for the submission of the plans and specifications and to order compliance with the order of the commission as so modified. See General Statutes § 25-22; *State Water Commission* v. *Norwich*, 141 Conn. 442, 445, 107 A.2d 270. It is obvious that the judgment must now be modified by fixing a new date for compliance, since the date fixed by the court has passed.

There is no error; the cause must be remanded with direction to modify the judgment by fixing a new date for compliance with the order of the commission.

In this opinion the other judges concurred.