STAM MANUFACTURING COMPANY, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Third District   No. 75-16

Opinion filed June 29, 1976.

Manion, Janov, & Edgard, Ltd., of Hoopeston (Rick Janov, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Paul E. Esposito, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from the Circuit Court of Iroquois County which affirmed the decision of the Department of Revenue of the State of Illinois finding that Stam Manufacturing Company owed $9,099.25 in additional taxes in an action brought under the Retailers' Occupation Tax Act.

The appeal stems from the ruling of the Illinois Department of Revenue that defendant Stam Manufacturing Co. owed the State sales tax on $45,360.86 worth of sales made during the years 1968 through 1970. As we have indicated, the trial court of Iroquois County affirmed the determination on an administrative review proceeding in that court. Stam manufactures and sells fertilizer and industrial trailers at its offices in Watseka, Illinois. The Department of Revenue conducted an audit of Stam's records for the years 1968 through 1970 and determined whether the company had made any sales in those years subject to the State sales

tax imposed by the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 440, 441), which had not been properly reported and paid. The Department initially found $171,864.08 in sales made by Stam on which no sales tax had been paid. The company conceded tax liability on $76,790.60 of this amount but contested the remaining portion. In the Department of Revenue hearing where it was determined that $49,713.03 of the contested portion was exempt from sales tax because it represented sales made in interstate commerce (Ill. Rev. Stat. 1975, ch. 120, par. 441), it was, however, determined that the balance of $45,360.86 was subject to sales tax despite the claim of Stam that these sales were also exempt because they were made for purposes of resale. (Ill. Rev. Stat. 1975, ch. 120, par. 440.) Under the Illinois statutes it is provided that corrected returns made by the Department, such as those resulting from audit in the case before us, are considered *prima facie* correct indicators of the amount of tax due. (Ill. Rev. Stat. 1975, ch. 120, par. 443.) It is also provided that all sales are presumed to be subject to the sales tax, unless shown by the taxpayer to be otherwise. (Ill. Rev. Stat. 1975, ch. 120, par. 446.) In section 7 (par. 446), the taxpayer-seller is required to keep adequate books and records to demonstrate the character of the sales when required.

■■ One permissible method of showing that a sale was made for purposes of resale, and thus fall within one of the exceptions of the sales tax act is by certificates of resale. Department of Revenue Rules and Regulations, art. XIII, §§1-5 (1967), provide that it is the seller's responsibility to determine the character of the sale and to obtain certificates of resale when appropriate, which will then be *prima facie* evidence that the sales were exempt from tax. The certificates should bear the name, address and registration number of the purchaser, the date when it was signed by the purchaser, and sufficient identification of the property sold. Blanket certificates of resale may also be used when all the sales made to a purchaser are for purpose of resale. (Rules and Regulations, art. XIII, §§3-5.) In such case it is obvious that specific description of future sales of property could not be made and would not be required.

In the instant case, Stam sought to overcome the Department's *prima facie* case by offering blanket certificates of resale covering $45,360.86 in sales now in dispute and by testimony of the company comptroller, Frank Sweet, that he did not know of any instances where the property was not used for resale by the purchaser. The Department contended, and the hearing officer determined, that blanket certificates of resale were insufficient under the Department's Rules and Regulations and that Stam thus failed to meet its burden in challenging the Department's audit. There was no specific evidence offered by either of the litigants as to the

actual details of any of the challenged sales, and the sufficiency of the blanket certificates of resale is the sole issue and deciding factor in the case before us.

■■ None of the certificates of resale described the property being purchased thereunder, as apparently required under section 3 in the Rules and Regulations. Blanket certificates of resale, as we have indicated, would not be required to describe the property, since they may cover a series of sales to be completed in the future. Those certificates which did not state that the property is being purchased for the purpose of resale, as "required" by section 2, are inadequate even though they are entitled "Certificates of Resale," and were properly rejected.

Under section 5 of the Rules and Regulations under consideration, we find the following provisions:

> "If all the sales which a seller makes to a particular purchaser are for resale, the seller may take a blanket Certificate of Resale from such purchaser. The seller should not take a blanket certificate of resale, covering all of his sales to such purchaser, if such purchaser makes some of his purchases of tangible personal property from such seller for use or consumption.
>
> If a purchaser knows that all his purchases of a given type of tangible personal property from a particular seller will be made for purposes of resale, he may provide, and such seller may accept, a blanket certificate of resale covering purchases of that type."

■■ From this section 5, it is apparent that the use of blanket certificates is limited to instances where the seller knows, or it is represented by the buyer, that all property purchased by such buyer under such certificates is being purchased for resale purposes, and not for use by the purchaser. In the cause before us, blanket certificates of resale were used by the Stam Corporation. There was also testimony of Stam's comptroller, Sweet, which the State interprets as simply stating an inadequate conclusion that it appeared "more likely than not" that the property involved would be used for resale by the purchaser. The testimony of the comptroller, however, is to the effect that the purchases were represented by the buyer to be for resale, and that the comptroller thought it was more likely than not that such would be the case. Apparently Stam relied upon the purchaser's representation. Such certificates of resale are accepted by the Department as *prima facie* proof that the sales thereunder were for resale and thus exempt from tax, as shown by section 5 of the regulations.

Stam also argues on appeal that "small technicalities should not be a major consideration in the liability of the taxpayer," citing cases where the Illinois Supreme Court held that taxing statutes are to be strictly construed as against the government and in favor of the taxpayer. (See *e.g., Ingersoll Milling Machine Co. v. Department of Revenue* (1950), 405

Ill. 367, 90 N.E.2d 747; *Mahon v. Nudelman* (1941), 377 Ill. 331, 36 N.E.2d 550.) The accepted principle that taxing statutes are to be construed strictly does not mean that a taxpayer need not concern himself with the various requirements clearly set out by the law or other regulations applicable.

■■ We find, however, that there was apparent compliance with the rules of the Department and, since the Department furnished no evidence to the contrary, the blanket certificates of resale should have been recognized as being adequate. The conclusion of the Department of Revenue ruling, based on supposed inadequacy of the blanket certificates of resale, was in error and is reversed.

In the reply brief there is a response to inferences regarding possible estoppel arising out of the Department's acceptance of similar blanket certificates in past years and the possible violation of due process of law in the hearing system where the hearing officer is also the advocate for one of the parties. In the reply brief, however, Stam discounts any intention of making these separate issues, and we, therefore, have not given consideration to such questions as part of the appeal.

For the reasons stated, the judgment of the Circuit Court of Iroquois County is reversed and the cause is remanded to such court to modify the judgment in accordance with the views expressed in this opinion.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.