(No. 47678.—

THE HOMEFINDERS, INC., *et al.*, Appellants, v. THE CITY OF EVANSTON *et al.*, Appellees.

*Opinion filed November 15, 1976.*

116

Robert W. Bergstrom, Ronald W. Teeple, and Robert J. Hackman, of Bergstrom, Davis & Olson, of Chicago, for appellants.

Jack M. Siegel, of Evanston, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, Germaine Engelhardt, and her employer, The Homefinders, Inc., commenced this action in the

circuit court of Cook County for review of an administrative decision of the Evanston Fair Housing Review Board which had fined each of them for violation of the Evanston Fair Housing Ordinance. The circuit court reversed the Board's decision, and was, in turn, reversed by the appellate court, which affirmed the Board's order on the ground that the circuit court lacked jurisdiction to review the matter (*Homefinders, Inc. v. City of Evanston* (1975), 28 Ill. App. 3d 789). We granted leave to appeal.

The plaintiff corporation is a Wilmette based real estate company engaged in the sale of real estate in Evanston and other communities in the Chicago area. Plaintiff Germaine Engelhardt is a sales representative employed by Homefinders. The defendants are the City of Evanston, the Evanston Fair Housing Review Board, the individual members of the Board, and the Evanston Human Relations Commission.

The Evanston Fair Housing Ordinance contains provisions licensing and regulating real estate brokers and prohibiting various forms of discrimination in real estate transactions on account of race, color, religion or national origin. The ordinance creates a seven-member Fair Housing Review Board consisting of a member of the Evanston Human Relations Commission, a licensed real estate broker practicing in Evanston, an attorney licensed to practice in Illinois, and four members at large, all of whom shall be residents of Evanston. The member of the Evanston Human Relations Commission is appointed by that body, and the other members are appointed by the mayor with the consent of the city council. The Board is charged with the duty of receiving, investigating and seeking conciliation of complaints charging discrimination, holding hearings on complaints, making findings of fact and recommendations in accordance with the ordinance and securing compliance by violators. The Board is also empowered to impose specified penalties and fines against those found guilty of violating the ordinance. The ordinance provides that

appeals from decisions of the Board may be taken in accordance with the procedures specified in the Administrative Review Act of Illinois (Ill. Rev. Stat. 1971, ch. 110, pars. 264-279).

On June 20, 1972, the Evanston Human Relations Commission filed a complaint with the Evanston Fair Housing Review Board alleging that The Homefinders, Inc., and certain of its officers and sales representatives had engaged in discriminatory practices in violation of the Evanston Fair Housing Ordinance. Hearings before the Board commenced on November 30, 1972. Four white women testified that they made separate visits to Homefinders' offices in Wilmette at the request of the Evanston Human Relations Commission to test compliance with the Fair Housing Ordinance. Each of the four "testers" represented to Homefinders' sales representative that she was interested in buying a home in Evanston, and after looking at a list of Evanston homes which were for sale, she expressed an interest in particular homes which she knew to be in racially integrated areas of the city. Each of them testified that the sales representative then made unsolicited, negative remarks concerning the homes in question, including comments with respect to decreasing property values, racial incidents in the schools and the general undesirability of the area in which the homes were located as compared to other areas. The sales representatives denied making some of the remarks attributed to them and further testified that certain other statements had been made in response to particular inquiries from the testers. Following the close of the hearings, the Fair Housing Review Board filed a written report dated April 19, 1973, which included findings that The Homefinders, Inc., and its sales representative, Germaine Engelhardt, had violated specified antidiscrimination provisions of the Fair Housing Ordinance on two separate occasions. Penalties were imposed upon Germaine Engelhardt of $100 for each

of the two violations and upon Homefinders in the amount of $500 each.

The complaint for review filed by plaintiffs in the circuit court asserted various grounds for reversal of the report of the Fair Housing Review Board including an allegation that "the Report was issued by the Board in violation of the provisions of its own enabling act (Ordinances of the City of Evanston, No. 27—0—70, Ch. 25½) in that the Board wholly failed to have five board members who participated in each hearing and wholly failed to vest the determination of the penalty in the entire Board, as therein required." Although the circuit court made no written findings, it is apparent from the record before us that this was the principal ground upon which the order of reversal was based.

The appellate court did not reach the merits of the questions raised in the circuit court in view of its conclusion that the circuit court lacked jurisdiction to review the decision of the Fair Housing Review Board. In so holding, the appellate court followed *Nowicki v. Evanston Fair Housing Review Board* (1974), 25 Ill. App. 3d 129, in which that court relied upon decisions of this court in *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, and *Cummings v. Daley* (1974), 58 Ill. 2d 1, in support of its conclusion that the City of Evanston was without power to declare the Administrative Review Act applicable to administrative decisions rendered under the Evanston Fair Housing Ordinance. The appellate court's decision in *Nowicki* was reversed by this court in *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, which was decided subsequent to the date of the appellate court's decision in this case. We there held that even though the administrative agency's decision was not subject to review under the provisions of the Administrative Review Act, it was nevertheless reviewable by common law *certiorari* and that the complaint filed in the

circuit court was sufficient to permit review on that basis. Our decision in *Nowicki* is controlling here. As we stated in that case: "Labels have long since lost their significance in determining the legal sufficiency of a complaint in an ordinary action at law or in equity, and we see no reason why they should retain significance in actions to review the determinations of administrative agencies." (62 Ill. 2d 11, 15.) The complaint in this case sought judicial review of the decision of the Fair Housing Review Board. Notwithstanding the fact that the complaint was entitled "Complaint for Administrative Review" and included a prayer for review under the Administrative Review Act in accordance with the terms of Evanston Fair Housing Ordinance, we are of the opinion that the complaint was sufficient to warrant treatment as a common law writ of *certiorari* instead of solely an action under the Administrative Review Act. Accordingly, the decision of the appellate court holding that the circuit court lacked jurisdiction to review the decision of the Evanston Fair Housing Review Board is reversed. However, since all issues have been argued and briefed in this court, and remandment to the appellate court for consideration of the merits would involve unnecessary delay, it is appropriate that we retain jurisdiction for that purpose.

We turn then to the question of whether the Fair Housing Review Board acted within the scope of the powers conferred upon it by ordinance when only four of its seven members conducted hearings and issued a report which made findings and imposed fines. As enacted in 1970, pertinent provisions of section 25½–17 of the Evanston Fair Housing Ordinance prescribed the powers and duties of the Fair Housing Review Board. They provided that administrative hearings of complaints filed with the Board

"shall be conducted by any five or more members òf the Board thereof who thereafter shall attend all adjourned

meetings of the complaint upon due and reasonable notice to all parties."

As discussed later in this opinion, an amendatory ordinance was passed by the Evanston city council on October 9, 1972, purporting to reduce the minimum number to three. The ordinance goes on to provide:

"At the conclusion of the hearings, the Board shall render a written report with findings which shall be served by mail upon the complainant and the respondent. Only those members who attend all hearings may participate in the final determination of the complaint. However, to reach a decision, a majority of the hearing members must concur in the findings."

The ordinance then empowers the Board to impose certain penalties as follows:

"The Board shall be empowered at the conclusion of such proceedings, and as part of its report to suspend or revoke, for a period not to exceed one year, the license of any broker licensed by the City of Evanston who shall have been a respondent to any proceedings thus filed and found guilty of violation of any applicable provision of the within ordinance. ***

In addition thereto, the Board may direct the Corporation Counsel to file with the Department of Registration and Education of the State of Illinois a complaint against any real estate broker found guilty of violating any provision of this ordinance, seeking suspension or revocation of the license issued to such broker by the State of Illinois."

With respect to the power to impose penalties, the ordinance further provides:

"If a respondent has been found guilty of a violation of this ordinance, in accordance with the procedures specified herein, the determination of the nature and extent of the penalty shall be vested in the entire Board."

Section 25½—19 of the ordinance entitled "Penalty" provides:

"Any person, firm or corporation violating the provisions of this ordinance shall be fined not less than one hundred dollars ($100) nor more than five hundred dollars ($500)

> for each such offense. Every day a violation continues shall be deemed a separate offense."

Hearings were held before the Fair Housing Review Board in this matter on three different dates. The Board's written report recites that only four members of the Board were present at each hearing, which is confirmed by the transcript of proceedings. The imposition of penalties contained in the report also appears to be the decision of the same four members who attended the hearings and signed the report. There is no explanation in the record as to why the other three members of the Board did not participate.

One of the allegations made by plaintiffs in the circuit court was that the Board was improperly constituted for failure to comply with the provision of the 1970 Evanston Fair Housing Ordinance that administrative hearings "shall be conducted by any five or more members of the Board." In response thereto defendants filed as an addendum to a memorandum of law a document which was certified by the Evanston city clerk to be a true and correct copy of an amendatory ordinance adopted by the Evanston city council reducing the minimum number of members necessary to conduct hearings from five to three. Section 3 of the amendatory ordinance provided as follows:

> "This ordinance shall be in full force and effect from and after its passage, approval and publication in the manner provided by law."

The certified copy of the ordinance shows on its face that it was introduced, adopted and approved on October 9, 1972, but does not show any date of publication. Defendants offered no other proof with respect to the amendatory ordinance or its publication.

Plaintiffs argue that by its own terms, the ordinance was not to come into effect until after publication in the manner provided by law and that there was a total lack of proof that the ordinance was ever published. Defendants contend that publication was not required under the

provisions of section 1—2—4 of the Illinois Municipal Code, which requires publication only when the ordinance imposes a fine, penalty, imprisonment, forfeiture or makes an appropriation. That statute provides in pertinent part:

> "All ordinances of cities, villages and incorporated towns imposing any fine, penalty, imprisonment, or forfeiture, or making any appropriation, shall (1) be printed or published in book or pamphlet form, published by authority of the corporate authorities, or (2) be published at least once, within 10 days after passage, in one or more newspapers published in the municipality ***.

> All other ordinances, resolutions and motions, shall take effect upon their passage unless they otherwise provide." (Ill. Rev. Stat. 1971, ch. 24, par. 1—2—4.)

While publication of the amendatory ordinance may not have been required by statute, the fact nevertheless remains that the ordinance itself specifically provided that it was not to become effective until after "publication in the manner provided by law," *i.e.,* by one of the methods specified in section 1—2—4. The decision of the city council to require publication in this instance may well have been motivated by the significant effect of the amendatory ordinance which authorized only three members of the seven-member Board to hear the sensitive matters which come before the Board with the concurrence of only two Board members being necessary to render findings.

As a consequence of plaintiffs' challenge to the composition of the Board, it was incumbent upon defendants to prove that the amendatory ordinance reducing the required number of board members from five to three was in full force and effect in accordance with its terms at the time of the hearing. Sections 1—2—5 and 1—2—6 of the Illinois Municipal Code set forth an approved method by which this may be accomplished. Section 1—2—5 provides in pertinent part:

> "The municipal clerk shall record, in a book used exclusively for that purpose, all ordinances passed by the

corporate authorities. Immediately following each ordinance the municipal clerk shall make a memorandum of the date of the passage and of the publication or posting, where required, of the ordinance. This record and memorandum, or a certified copy thereof, shall be prima facie evidence of the contents, passage, and of the publication or posting of ordinances." (Ill. Rev. Stat. 1971, ch. 24, par. 1—2—5.)

Section 1—2—6 states:

"The contents of all municipal ordinances, the date of passage, and the date of publication or posting, where required, may be proved by the certificate of the municipal clerk, under the seal of the corporation.

Whenever municipal ordinances are printed in book or pamphlet form, and purport to be published by authority of the corporate authorities, such book or pamphlet shall be prima facie evidence of the contents, passage, and legal publication of such ordinances, as of the dates mentioned in such book or pamphlet, in all courts and administrative tribunals." (Ill. Rev. Stat. 1971, ch. 24, par. 1—2—6.)

Defendants did not offer proof of the amendatory ordinance in this fashion. Although, as earlier noted, they did attach a certified copy of the amendatory ordinance to a memorandum of law filed in the circuit court proceedings, the certificate of the municipal clerk attached thereto certifies only that it was adopted on October 9, 1972, without any reference to publication. Likewise, the copy of the ordinance itself shows on its face the date of introduction, adoption and approval but gives no indication of the date of publication which was by the terms of the ordinance a condition to its becoming effective. Plaintiffs' challenge to the composition of the Board and its authority to conduct hearings with less than five members must therefore be sustained.

In support of their contention that the Board exceeded its authority when it imposed monetary penalties in a decision rendered by four of its seven members, plaintiffs rely upon the provision of the ordinance which specifies that "the determination of the nature and extent of the

penalty shall be vested in the entire Board." Defendants, on the other hand, cite the provision which states that "Only those members who attend all hearings may participate in the final determination of the complaint." They contend that since the ordinance contemplates that less than all members of the Board may participate in hearings, the ordinance should be construed as if it read "the determination of the nature and extent of the penalty shall be vested in the entire Board which participated in the hearings." They argue further that procedural due process requires that the determination of penalties be made by those members who heard the evidence.

It is evident that the ordinance makes a distinction between proceedings to determine guilt of violation of the ordinance on the one hand and the determination of penalties on the other. As to the former, the ordinance specifies a minimum number of members who may conduct hearings, reach a decision and render findings. It is with reference to this function that the ordinance provides that "Only those members who attend all hearings may participate in the final determination of the complaint." It is "at the conclusion of such proceedings" that the power to impose penalties is conferred. In contrast to the provisions which authorize less than all seven members to conduct hearings and render findings, the ordinance expressly provides that the power to impose penalties "shall be vested in the *entire Board.*" (Emphasis added.) In our opinion, this language in clear and certain terms mandates that the determination of penalties shall be made by the entire Board and not just those members of the Board who were present at the hearings. We deem it appropriate to comment that this provision does not necessarily preclude the imposition of penalties if partici-pation by all seven members of the Board is impossible due to such circumstances as illness, death, disqualification or refusal to act. However, that question is not before us, since the record does not contain any explanation for the

nonparticipation of three Board members. In the absence of such explanation, we must agree with plaintiffs that the Fair Housing Review Board did not act within the scope of the powers conferred upon it by ordinance when it imposed monetary penalties in this case.

We do not concur with defendants' contention that due process requires that only those members of the Board who personally attended the hearings may participate in the determination of penalties. They cite *Morgan v. United States* (1936), 298 U.S. 468, 80 L. Ed. 1288, 56 S. Ct. 906, in which the Supreme Court stated: "The one who decides must hear." (298 U.S. 468, 481, 80 L. Ed. 1288, 1295, 56 S. Ct. 906, 912.) It must be noted, however, that the court immediately went on to make it clear that it did not mean that the one who decides must personally be present when evidence is taken. *Morgan* and other Federal decisions have consistently recognized that, in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority. (*E.g., Anniston Manufacturing Co. v. Davis* (1937), 301 U.S. 337, 81 L. Ed. 1143, 57 S. Ct. 816; *Quon Quon Poy v. Johnson* (1927), 273 U.S. 352, 71 L. Ed. 680, 47 S. Ct. 346; *Estate of Varian v. Commissioner* (9th Cir. 1968), 396 F.2d 753; *NLRB v. Stocker Mfg. Co.* (3d Cir. 1950), 185 F.2d 451; see also Annot., *Administrative decision by officer not present when evidence was taken*, 18 A.L.R.2d 606 (1951).) They indicate to the contrary that administrative proceedings may be conducted by hearing officers who refer the case for final determination to a board which has not "heard" the evidence in person. The requirements of due process are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determinations thereon. (*Morgan; Anniston Manufacturing Co.; Estate of Varian; Stocker Mfg. Co.;* see also 2 Davis, Administrative Law sec. 11.02

(1958); 2 Am. Jur. 2d *Administrative Law* sec. 437 (1962).) A substantial majority of State courts which have considered the question have come to the same conclusion. (*E.g., Bertch v. Social Welfare Department* (1955), 45 Cal. 2d 524, 289 P.2d 485; *City of Derby v. Water Resources Com.* (1961), 148 Conn. 584, 172 A.2d 907; *Hinrichs v. Iowa State Highway Com.* (1967), 260 Iowa 1115, 152 N.W.2d 248; *Clairborne v. Coffeyville Memorial Hospital* (1973), 212 Kan. 315, 510 P.2d 1200; *Younkin v. Boltz* (1966), 241 Md. 339, 216 A.2d 714; *Napuche v. Liquor Control Com.* (1953), 336 Mich. 398, 58 N.W.2d 118; *Foley Brothers, Inc. v. Commonwealth of Pennsylvania Department of Highways* (1960), 400 Pa. 584, 163 A.2d 80; *Tecumseh Products Co. v. Wisconsin Employment Relations Board* (1964), 23 Wis. 2d 118, 126 N.W.2d 520; contra, *McAlpine v. Garfield Water Com.* (1947), 135 N.J.L. 497, 52 A.2d 759.) We are in accord with the majority view and conclude that the requirements of procedural due process would be met under the Evanston Fair Housing Ordinance if those members who were not personally present at the hearings base their determination of penalties on the evidence contained in the transcript of such proceedings.

It is settled that administrative bodies have only such powers as are conferred upon them by statute or ordinance. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108; *Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301; *People ex rel. Hurley v. Graber* (1950), 405 Ill. 331; *People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322; *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473.) Since an administrative agency is a creature of the legislative body from which it derives its existence and authority, any of its acts or orders which are unauthorized by the enabling statute or ordinance are void. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108; *People ex rel. Highway Transportation Co. v. Biggs*

(1949), 402 Ill. 401.) In view of our conclusion that the Fair Housing Review Board was improperly constituted when it conducted hearings, rendered its report and imposed fines, the decision of the circuit court reversing the report of the Evanston Fair Housing Review Board must be affirmed.

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*