AMERICAN WELDING SUPPLY CO., Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fifth District    No. 81-200

Opinion filed April 16, 1982.

94

Robert E. Shaw, of Musick & Mitchell, P. C., of Mt. Vernon, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Jefferson County affirming an assessment of tax liability made by the Illinois Department of Revenue (Department) against American Welding Supply Company (American Welding) pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*). On appeal American Welding contends that it was deprived of due process when the Department rendered its final tax assessment without participation by the officer who presided at the administrative hearing. Additionally, American Welding challenges certain rulings made by the Department in disallowing deductions taken by the taxpayer. We affirm in part and reverse in part.

American Welding is in the business of selling welding equipment and supplies as well as welding gases and medical grade oxygen. On November 29, 1973, the Department issued a notice of tax liability against American Welding which totalled $6,091.52 for the period of July 1, 1970, through June 30, 1973. American Welding filed a notice of protest, and on January 21, 1974, an administrative hearing was held before hearing officer Lawrence J. Starman.

At the hearing the Department's revenue auditor testified for the Department as to the manner in which plaintiff's tax liability was determined. He stated that during the course of the audit he examined sales invoices, summary sheets, journal sheets and copies of both plaintiff's Federal income tax returns and retailer's occupation tax returns. He did not examine monthly statements or accounts receivable ledgers. The total sales as reflected in the sales invoices were compared with the taxpayer's sales summary sheets. If an item was returned and a credit memo given, he did not include that cancelled invoice in the list of taxable ones.

Deductions taken by the taxpayer were disallowed in three principal areas: delivery charges on gas sales, certain sales for resale, and certain sales for use in installation of pollution control equipment. The auditor stated that the only justification he found for the delivery charge deductions was a letter of the taxpayer to its customers stating that after a certain date 5% of the gas price would be considered a delivery charge. The auditor found this to be insufficient to qualify under the Department's rule that delivery charges must be separately contracted for in order to be deductible, and he accordingly disallowed the taxpayer's deduction of 5% of the gas sales as a delivery charge.

The auditor also disallowed deductions taken by the taxpayer on certain sales for resale despite the fact that the taxpayer had obtained certificates of resale from its customers on these sales. The auditor stated that he did not accept the certificates when the items sold were delivered

to a contract job site or when it was unlikely that the items would be resold due to the nature of the purchaser's business or the nature of the items sold. One of the certificates, made by the Roberts & Schaefer Company, was disregarded because of an invalid registration number.

The auditor similarly disallowed a deduction taken for items sold for construction of a pollution control plant although the purchaser had furnished the taxpayer with a letter certifying that the plant was exempt from tax as a "pollution control facility." The basis for the auditor's decision was that items such as those in question—welding gas, goggles, gloves, welding helmets, lenses and their repair parts, and hand cleaner—"do not become a part of the pollution control equipment" so as to be deductible under Department rules. The auditor said that he had not seen the plant in question and did not know what parts may have been put in it but that it was the taxpayer's burden under the applicable Department rule to prove that the goods were installed in the plant.

Following the presentation of the Department's evidence, Joe Lawrence, president of American Welding, was called as a witness for the taxpayer. He testified that American Welding's sales tax returns were prepared from monthly statements sent to customers rather than from sales tickets or invoices. Lawrence identified the pollution control certificate and the various resale certificates that had been introduced into evidence and stated that he had relied upon them in making the sales in question. He had been informed by representatives of each of the purchasers who provided resale certificates that they do resell merchandise. Lawrence stated that when a certificate of resale is offered, he accepts the certificate for what it says and does not investigate further.

A hearing disposition was filed on June 21, 1976, finding tax due in the amount of $5,571.56, including interest and penalties. This figure reflected an adjustment made to correct the auditor's error of disallowing the 5% gas sales deduction twice—once as a delivery charge and again when claimed resales of gas were disallowed. The author of the hearing disposition, Willard Ice, stated that hearing officer Starman was no longer with the Department and had turned in the case file without preparing a written hearing recommendation, thereby making it necessary for Ice to write the recommendation from a review of the record. Due to the hearing officer's delay in submitting the file to the Department, Ice recommended that interest on the amount due be waived for the interval between the hearing date and the disposition.

In his disposition Ice approved the auditor's disallowance of deductions for 5% of the gas sales, finding that the taxpayer failed to prove the existence of a separate contract for delivery charges. He also agreed that the certificates for resale presented to the auditor did not entitle the taxpayer to resale deductions because they were blanket certificates

covering all purchases by a given purchaser and the taxpayer did not show that all the purchases were for resale. Ice stated that "[e]ven if some small percentage of the sales might conceivably have been for resale, and even if this were admitted, it would still be the taxpayer's burden to show which ones were for resale," citing *Belleville Shoe Manufacturing Co. v. Department of Revenue* (1956), 7 Ill. 2d 574, 131 N.E.2d 511. Likewise, with respect to the deductions taken for sales for utilization in pollution control equipment, Ice determined that "[w]ith the possible exception of some repair parts, the types of items [sold] would rather clearly not become a part of the pollution control facility and so would not qualify for the pollution control facility exemption." Ice stated that even if some of the repair parts might have been for the pollution control facility itself, and not, as the auditor testified, for welding equipment used in installing the facility, the taxpayer did not sustain his burden of proving this. As for the pollution control certificate obtained from the purchaser, Ice concluded that most, if not all, of the items involved could not reasonably be said to be classifiable as "pollution control facilities," and thus the taxpayer was not justified in accepting and relying upon such a certificate.

The Department issued its final assessment on July 12, 1976, for $5,571.56, and American Welding sought administrative review. The trial court affirmed the Department's disposition and entered judgment against the taxpayer in the total amount of $5,205.15. The record contains no explanation for the discrepancy between the amount of the judgment and that assessed by the Department.

On appeal from this judgment American Welding initially raises an issue regarding the sufficiency of the record on appeal. We have, of course, examined the entire record, and we deem the record before us sufficient to consider all the issues addressed by the parties on appeal. Accordingly, we find it unnecessary to consider American Welding's arguments regarding the sufficiency and content of the record.

We turn, then, to a consideration of American Welding's contention that the Department's decision, rendered without participation by the hearing officer, constituted a denial of due process. The general rules as to the requirements of due process in proceedings before an administrative agency have been set forth by our supreme court in *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785. The court there held that, absent a statute to the contrary, due process is satisfied when the decision-making body "considers the evidence contained in the report of proceedings before the hearing officer and bases its determinations thereon. [Citations.]" (65 Ill. 2d 115, 128, 357 N.E.2d 785, 791.) Thus, the due process principle that "the one who decides must hear" does not preclude the "practicable administrative procedure" of having a hearing officer take evidence and another officer make the decision as long as the

officer making the decision considers the evidence which justifies it. *Morgan v. United States* (1936), 298 U.S. 468, 80 L. Ed. 1288, 56 S. Ct. 906.

American Welding makes no claim that the decision makers in the case at bar failed to consider the record of the proceedings before hearing officer Starman. It contends, however, that the credibility of the Department's auditor was in question at the hearing and that in such a case due process requires that the decision-making body have the benefit of the hearing officer's findings and impressions of the witness' testimony. Thus, American Welding asserts, the Department's disposition of the hearing, written from the record by Willard Ice after hearing officer Starman left the Department, was inadequate to afford the taxpayer its due process right to a full and fair hearing.

While it is generally recognized that it is better practice for an administrative tribunal which has not itself heard the evidence to base its decision on a report made by the hearing examiner (2 Am. Jur. 2d *Administrative Law* sec. 430 (1962); Annot., 18 A.L.R.2d 606, 626-27 (1951)), Illinois courts have not specifically held this to be a due process requirement. (See *Southern Illinois Asphalt Co. v. Environmental Protection Agency* (1973), 15 Ill. App. 3d 66, 303 N.E.2d 606, *aff'd* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.) The court in *Ramos v. Local Liquor Control Com.* (1978), 67 Ill. App. 3d 340, 384 N.E.2d 912, while deciding the case on other grounds, acknowledged the rule set forth by the Utah Supreme Court in *Crow v. Industrial Com.* (1943), 104 Utah 333, 337, 140 P.2d 321, 322, to the effect that

> "[w]here there is a conflict in the testimony, and the weight and credibility to be given testimony of the various witnesses is the determining factor, in order to accord a 'full hearing' to which all litigants are entitled, the person who conducts the hearing, hears the testimony, and sees the witnesses while testifying, * * * must either participate in the decision, or where, at the time the decision is rendered, he has severed his connections with the board, commission or fact finding body, the record must show affirmatively that the one who finds the facts had access to the benefit of his findings, conclusions and impressions of such testimony, by either written or oral reports thereof."

Likewise, the court in *Southern Illinois Asphalt* discussed the need for a hearing officer's report when there are issues of credibility involved in an administrative ruling but expressly declined to rule on whether the failure to submit such findings of fact constitutes a denial of due process.

■■■ We agree that if the evidence before a hearing officer or examiner is in such conflict that the weight and credibility to be given the testimony of various witnesses is the determining factor, due process may require that the examiner participate in the decision by submitting a report of his

conclusions and impressions. (See *Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102.) This, however, is not the situation in the case at bar. The taxpayer offered no testimony in the hearing before officer Starman challenging or conflicting with the auditor's testimony as to the manner in which he prepared the corrected returns. The issues before the Department in rendering its decision did not depend upon the witnesses' credibility at the hearing but were, rather, issues concerning the interpretation of the applicable statute and the Department's rules and regulations. In the absence of a statutory requirement to the contrary (see Ill. Rev. Stat. 1979, ch. 120, par. 447), the determination of these issues could properly be made upon a review of the record (*Homefinders*) where, as here, the hearing officer left the Department's employ before submitting a recommended disposition. Accordingly, we find no merit in American Welding's due process argument.

American Welding next challenges rulings made by the Department in disallowing deductions taken by it for delivery charges on gas sales, sales for resale, and sales of pollution control equipment. It asserts, preliminarily, that the Department failed to make a *prima facie* case against it as to the amount of tax due.

■■ Under section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 443), a corrected return of the Department "shall be prima facie evidence of the correctness of the amount of tax due" so long as the return is corrected according to the "best judgment and information" of the Department. This requirement is satisfied and the Department's *prima facie* case established when evidence is presented to show that the corrected return was prepared in a "reasonable" manner. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) While not required to do so by statute, the Department here produced the auditor who testified that he examined the taxpayer's sales invoices, sales summary sheets and copies of the taxpayer's past returns. The auditor also gave reasons supporting his disallowance of the deductions at issue in this appeal. Although the taxpayer's president stated that he had prepared its returns by referring to monthly statements rather than sales invoices, there is no indication that the auditor's method of computing sales was less accurate, considering that he did not include invoices for which credit memos had been given. We find, therefore, that the Department properly demonstrated that its corrected returns were prepared in a reasonable manner, entitling these returns to a presumption of validity.

■■ The Department having established its *prima facie* case, the burden was on the taxpayer to overcome this presumption of validity by producing competent evidence to show that the Department's returns were incorrect. (*Masini.*) In preparing the audit returns, the auditor taxed 5% of gas sales which the taxpayer had deducted as delivery charges because he

found that the taxpayer had failed to sustain its burden of showing that these charges were not part of the selling price of the gas. (See Ill. Rev. Stat. 1979, ch. 120, par. 446, which provides that all sales of tangible personal property are presumed to be subject to tax unless the taxpayer proves otherwise.) Under the pertinent statute, "selling price" is to be determined "without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost *or any other expense whatsoever* * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 440.) The Department has provided by regulation, however, that transportation and delivery charges are not included in the selling price so long as the seller and the buyer

> "agree upon the * * * charges separately from the selling price of the tangible personal property which is sold[. T]hen the cost of the transportation or delivery service is not a part of the 'selling price' of the tangible personal property which is sold, but instead is a service charge, separately contracted for, and need not be included in the figure upon which the seller computes his retailers' occupation tax liability." (Art. 3, par. 4a, of the Rules and Regulations of the Illinois Department of Revenue.)

At the hearing the auditor testified that there was no separate breakdown of any delivery charges on the invoices which he examined and that the only justification in the taxpayer's records for the delivery charge deduction was a "letter supposedly sent to [its customers] saying effective on a certain date 5% of the gas charge would be considered a delivery charge." Although the taxpayer, in this appeal, asserts that the auditor erred in determining that this letter did not constitute a contract, it failed to produce any evidence at the hearing to support its claim that the delivery charges were separately contracted for and therefore deductible. Neither the letter referred to by the auditor nor any of the taxpayer's invoices or statements concerning gas sales were introduced at the hearing. The taxpayer's bare assertion that the Department erred, without competent evidence to support its position, is insufficient to overcome the Department's *prima facie* case, as "[s]imply questioning the [Department's] return or denying its accuracy does not shift the burden to the [Department]." (*Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill. App. 3d 725, 730-31, 298 N.E.2d 789, 793.) Thus, we find no error in the Department's disallowance of the delivery charge deductions.

■■ The Department also disallowed deductions for certain sales for resale, in spite of the certificates of resale furnished to the taxpayer by the purchasers. The certification procedure for sales for resale is provided for by statute. Under section 1 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440),

> " 'Sale at retail' shall be construed * * * to include any transfer

* * * for resale in any form as tangible personal property *unless made in compliance with Section 2c of this Act*." (Emphasis added.)

Section 2c of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 441c) provides:

"[N]o sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale."

American Welding contends that, under the statute, compliance with section 2c is sufficient to entitle it to a deduction for sales for resale and that it is not required to prove also that the sales were not for use or consumption. We agree.

The Department based its disallowance of deductions for sales for resale on article 13, paragraph 2, of its rules and regulations, which it interpreted as placing the burden on the taxpayer to show that the sale was indeed for resale. This regulation states in pertinent part:

"A Certificate of Resale is a statement signed by the purchaser that the property purchased by him is purchased for purposes of resale. *Provided that this statement is correct*, the Department will accept Certificates of Resale as *prima facie proof* that sales covered thereby were made for resale." (Emphasis added.)

The auditor disallowed claimed sales for resale because they "were of a type which, when sold to the kinds of purchasers involved, would almost have to be for use and not for resale." Further, the author of the hearing disposition cited article 13, paragraph 5, of the Department's rules and regulations, which provides that

"[t]he seller should not take a blanket Certificate of Resale, covering all of his sales to such purchaser if such purchaser makes some of his purchases of tangible personal property from such seller 'for use or consumption,' "

and disallowed the resale deductions because

"[a]ll Certificates of Resale which the taxpayer had from these purchasers were blanket certificates * * * and the taxpayer did not even pretend to testify that all of the purchases would be for resale."

We do not agree that the taxpayer, after obtaining certificates of resale from its purchasers, had the additional burden of proving that these sales were indeed for resale. To say that paragraph 2, article 13, of the Department's rules places such a burden on the taxpayer is contrary to the statute and to the rule itself, which provides that the resale certificate shall be *prima facie* proof that the sales covered by the certificate were made for resale. (*Rock Island Tobacco & Specialty Co. v. Department of Rev-*

*enue* (1980), 87 Ill. App. 3d 476, 409 N.E.2d 136.) The court in *Rock Island Tobacco & Specialty Co.*, in dealing with a similar situation, stated:

> "To permit an auditor to disallow the certificates without any evidence at all that the merchandise was not sold for resale is to render the presumption void of any effect. If the Department is to follow its rules, auditors cannot be permitted to disallow a proper certificate of resale when there is no evidence to show the merchandise sold was not for resale." 87 Ill. App. 3d 476, 479, 409 N.E.2d 136, 139.

As in *Rock Island Tobacco & Specialty Co.*, the Department here has produced no evidence that the goods covered by the resale certificates were not for resale. In addition, the taxpayer's president testified at the hearing that the purchases were represented by the buyer to be for resale and that he relied on these representations. We find this to be sufficient compliance with the Department's rule as to the blanket resale certificates (article 13, paragraph 5) to constitute *prima facie* proof of their correctness. (See *Stam Manufacturing Co. v. Department of Revenue* (1976), 39 Ill. App. 3d 753, 350 N.E.2d 259.) The effect of producing these certificates at the hearing was to shift the burden of proof from the taxpayer to the Department. The Department did, however, rebut the correctness of the resale certificate obtained from the Roberts & Schaefer Company, as the auditor testified that its registration number was invalid and this was not disputed by the taxpayer. Thus, we find that the Department's disallowance of deductions for sales for resale was improper except as to sales for resale to Roberts & Schaefer Company.

■■■ Similarly, we find that the Department improperly disregarded the effect of the pollution control certificate obtained by the taxpayer in disallowing deductions for sales of pollution control equipment. Section 1a of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440a) provides that the purchase, employment and transfer of tangible personal property as "pollution control facilities" is not subject to taxation under the Act. The statute broadly defines "pollution control facilities" as

> "any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution * * * or for the primary purpose of treating, pretreating, modifying or disposing of any potential * * * pollutant * * *."

The Department has provided by rule that

> "[t]his exemption includes not only the pollution control equipment itself, but also replacement parts therefor, but does not extend to chemicals used in any such equipment * * * nor to any other tangible personal property which may be used in some way in connection with such equipment, but which is not made a

physical component part of the equipment itself." (Art. 2, par. 6 of the Rules and Regulations of the Illinois Department of Revenue.) The Department has further provided for a certification procedure:

"If the purchaser or his contractor-installer buys an item that could reasonably qualify for exemption as a pollution control facility for use as a pollution control facility, the purchaser or his contractor-installer should certify this intended use of the item to the seller in order to relieve the seller of the duty of collecting and remitting the tax on the sale, but the purchaser who is buying the item in question allegedly for his use as a pollution control facility will be held liable for the tax by the Department if it is found that such purchaser does not use the item as a pollution control facility." Art. 2, par. 6, of the Rules and Regulations of the Illinois Department of Revenue.

Despite the certificate obtained from the purchaser in this case, the Department disallowed the taxpayer's deductions for sales of items purchased for construction of a pollution control plant, finding that the items involved (welding gases, goggles, gloves, repair parts, for example) would clearly not become a part of a pollution control facility so as to qualify for the exemption. We note in passing that the statutory language is extremely broad and in no way limits the exemption to items which "become a physical component part of the equipment itself." While the instant rule is entitled to some respect as an administrative interpretation of the statute, it is not binding on the courts and cannot be allowed to limit or extend the scope of the statute. (*Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 383 N.E.2d 197.) Further, to limit the exemption to sales of component parts of a pollution control facility, while not exempting sales of tangible personal property used in constructing the facility, may give rise to constitutional objections of unequal classification for taxation purposes. We need not decide these issues, however, as we find that the certification procedure designed by the Department to give effect to the statutory exemption places the burden of proving the use of items allegedly purchased as pollution control facilities on the purchaser-installer rather than on the seller. (*Cf. Du-Mont Ventilating Co.* and *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, 346 N.E.2d 69, where the issue was whether the *purchasers* of so-called pollution control equipment had sustained their burden of proof.) In this way it relieves the seller of what would otherwise be an impractical, if not impossible, obligation to determine the use to which its products are put after they are sold.

In the instant case the pollution control certificate produced by the taxpayer at the hearing was sufficient to rebut the Department's *prima facie* case, and, as the Department offered no evidence to show that the

taxpayer was not entitled to rely upon the certificate, the Department erred in disallowing the deductions taken by the taxpayer for sales of pollution control equipment.

In accord with our holdings herein, we reverse that portion of the trial court's judgment which affirmed the Department's disallowance of deductions for sales for resale and sales of pollution control equipment and affirm the remainder of the trial court's judgment. We further remand this case to the Illinois Department of Revenue to make an appropriate determination of the amount of tax due. See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.

Affirmed in part; reversed in part.

KASSERMAN and HARRISON, JJ., concur.