MELVIN G. CALDWELL, Plaintiff-Appellant, v. JAMES R. NOLAN *et al.*, Commissioners of the Chicago Board of Election Commissioners and Members of the Electoral Board for the Hearing and Passing Upon of Objections to Nominating Petitions for the Offices of Representative in the General Assembly and State Senator, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 88—0583

Opinion filed March 8, 1988.

Richard Flowers, of Chicago, for appellant.

David A. Epstein and Karlo M. Karacic, both of Carroll, Sain & Epstein, Ltd., and Michael Levinson, both of Chicago, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:
Plaintiff, Melvin G. Caldwell, appeals from an order dismissing his complaint for a writ of *mandamus* against defendants James R.

Nolan, Nikke M. Zollar and Michael J. Hamblet, commissioners of the Chicago Board of Election Commissioners and members of the Electoral Board for the Hearing and Passing Upon of Objections to Nominating Petitions for the Offices of Representative in the General Assembly and State Senator (Electoral Board or Board), and Charles G. Morrow III.

Defendant Charles G. Morrow III (Morrow) is a State representative seeking reelection from the 32nd representative district. Plaintiff, Melvin G. Caldwell (Caldwell), is one of Morrow's two opponents in the March 15, 1988, Democratic primary. Caldwell filed objections to Morrow's 1988 statement of candidacy claiming, *inter alia,* that Morrow is not a registered voter and that the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 8—8) requires Morrow to be registered. After an evidentiary hearing was conducted before a hearing officer, the Chicago Board of Election Commissioners, acting as members of the Electoral Board, issued a decision on January 13, 1988, which upheld Caldwell's objection to Morrow's statement of candidacy and ordered Morrow's name to be taken off of the ballot for the March 15, 1988, Democratic primary.

Two days later, on January 15, 1988, Morrow filed a motion to vacate the Electoral Board's decision and for a rehearing, based in part on new evidence. On January 19, 1988, the Board granted Morrow's motion in part and issued an "Amended Decision" vacating the January 13, 1988, decision and remanding the cause to the hearing officer on the existing record for reargument of certain points raised in Morrow's motion. The "Amended Decision," however, prohibited the hearing officer from considering any new or additional evidence.

The rehearing before the hearing officer was held the same day, January 19, 1988. Both Caldwell and Morrow were present. Caldwell objected to the rehearing but he also argued the merits of his objection to Morrow's statement of candidacy. Following the rehearing, the Electoral Board issued its "Second Amended Decision" on January 22, 1988, overruling the registration objection and ordering Morrow's name to be placed on the ballot. The Board found that Morrow's statement of candidacy was valid because his registration had been cancelled due to a clerical error by the Board of Election Commissioners, which had intended to cancel his deceased father's registration.

On Monday, January 25, 1988, Morrow received the Electoral Board's "Second Amended Decision." Morrow then filed a petition in the circuit court requesting judicial review of the Board's January 13, 1988, decision in the event that the Board's January 22, 1988, decision was invalidated in any other proceeding. The case was assigned

to Judge Schneider. On February 1, 1988, Morrow was allowed to dismiss his petition for judicial review with leave to reinstate. Morrow claims that he took a voluntary dismissal because of Caldwell's representation that he was not going to file an action challenging the Board's decisions of January 19, 1988, and January 22, 1988. Although Caldwell disputes this claim, we have not been provided with the transcript of proceedings before Judge Schneider on February 1, 1988, and thus we are unable to resolve this factual issue.

On Friday, February 5, 1988, Caldwell filed a complaint for a writ of *mandamus*. Caldwell asserted that the Electoral Board lacks statutory authority "to grant [a] rehearing or to make subsequent decisions in a matter once it has rendered a decision," and for that reason the Board's decisions of January 19, 1988, and January 22, 1988, were void and should be expunged. Caldwell also alleged that Morrow did not file a timely appeal from the January 13, 1988, decision.

Morrow moved to dismiss Caldwell's complaint on the following grounds: failure to exhaust statutory remedies; statute of limitations; waiver and estoppel; *laches*; and failure to join necessary parties. The Electoral Board also moved to dismiss the complaint, on the ground that the Board has authority to amend its decision within the 10-day period for judicial review so long as no new evidence is admitted. Subsequently, on February 17, 1988, and before any ruling on the motions to dismiss, Morrow filed an answer, repleaded his grounds for dismissal as affirmative defenses and filed a counterclaim.

In the counterclaim, Morrow alleged that he filed a valid statement of candidacy and that the Electoral Board's decision of January 13, 1988, was "erroneous, void and without basis or jurisdiction" because the Election Code does not require a candidate for State representative to be a registered voter. Morrow alleged further that if the Election Code does require a candidate for the General Assembly to be a registered voter, "such provision is unconstitutional and void as an invalid supplement to the qualifications for said Office established in Article IV, Section 2(c) of the Illinois Constitution of 1970, which qualifications (age, residence, citizenship) may not be altered or added to by any act of the legislature."

On February 17, 1988, the trial court granted the Electoral Board's motion to dismiss plaintiff's complaint finding that the Electoral Board is authorized to rehear a decision so long as no new evidence is adduced; that the Board's decisions of January 19, 1988, and January 22, 1988, were proper; that the sole means of attacking the validity of those decisions is by means of judicial review under section 10—10.1 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—

10.1); and that the issues raised by Morrow in his answer and counterclaim were mooted by the preceding findings.

Plaintiff filed his notice of appeal on February 18, 1988, and on February 25, 1988, we ordered an expedited briefing schedule so that this matter could be disposed of before the March 15, 1988, primary. Oral argument was heard on March 3, 1988.

It is our view that there are two principal issues to be decided in this appeal: whether the Electoral Board has the authority to allow a rehearing, or modify or alter its decisions,[1] and whether *mandamus* will lie to expunge a void order entered by an election board.

■ With respect to the first issue, our supreme court has stated:

"It is settled that administrative bodies have only such powers as are conferred upon them by statute or ordinance. [Citations.] Since an administrative agency is a creature of the legislative body from which it derives its existence and authority, any of its acts or orders which are unauthorized by the enabling statute or ordinance are void. [Citations.]" *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 129, 357 N.E.2d 785.

Consistent with this principle, the supreme court has held that "an administrative agency may allow a rehearing, or modify and alter its decisions, only where authorized to do so by statute." *Pearce Hospital v. Public Aid Comm'n* (1958), 15 Ill. 2d 301, 307, 154 N.E.2d 691.

In *Pearce,* the court stated that the Public Assistance Code contained neither a provision for rehearing nor an authorization for the Public Aid Commission to modify or alter the administrative decisions it was permitted to make. (15 Ill. 2d at 306.) The court reached this conclusion notwithstanding the Commission's statutory authority to "[m]ake all of the rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of this Code." Ill. Rev. Stat. 1957, ch. 23, par. 202.8.

■ Defendant Board purports to derive its authority to grant rehearings, or modify its decisions, from section 10—10 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—10), which states in relevant part:

"The electoral board on the first day of its meeting shall

---

[1]Under section 10—10 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—10), "the decision of [the] majority of the electoral board shall be final subject to judicial review as provided in Section 10—10.1." The parties agree that the January 13, 1988, decision of the Electoral Board was "final." The question is whether, prior to judicial review, the decision was subject to modification by the Board.

adopt rules of procedure for the introduction of evidence and the presentation of arguments and may, in its discretion, provide for the filing of briefs by the parties to the objection or by other interested parties."

Under this provision, the only rules the Electoral Board may adopt are procedural rules "for the introduction of evidence and the presentation of arguments."[2] The statute is silent on the matter of rehearings or modifications of Board decisions. We do not believe authority to grant rehearings or modify decisions may be inferred from that language. An administrative agency "must find within the statute the authority which it claims." *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 113, 357 N.E.2d 1154.

In *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671, the plaintiff, although stipulating that the Civil Service Commission did not have any rule or regulation providing a means for the rehearing of its decisions, argued that the Commission had "the inherent power to correct its orders, just as courts have continuing jurisdiction over their own decrees." (80 Ill. App. 2d at 334.) On that basis, he contended that "the Commission could correct its order even though there was no specific provision in the rules or in the ordinance for rehearing." 80 Ill. App. 2d 334.

Citing the supreme court's opinion in *Pearce Hospital,* the *Oliver* court rejected this contention, stating that the law is clear that "regulatory agencies have no inherent powers," but are "creatures of statute, vested only with those powers *specifically conferred upon them by the legislature.*" (Emphasis added.) (80 Ill. App. 2d at 334.) "[A]ccordingly," the court concluded, "they may modify their decisions only where authorized to do so by statute." 80 Ill. App. 2d at 334. Accord *Klaren v. Board of Fire & Police Commissioners* (1968), 99 Ill. App. 2d 356, 361-62, 240 N.E.2d 535. See also *City of Chicago v. Fair Em-*

---

[2]The Board has adopted such rules and they do not refer to rehearings. Rule 13, however, provides that "[f]or matters not covered herein, the Board will generally follow rules of practice which prevail in the Circuit Court of Cook County, Illinois, but because of the nature of these proceedings, the Board shall not be bound by such rules in all particulars." Defendants assert that Rule 13 incorporates by reference the Code of Civil Procedure, which specifically authorizes motions for rehearing or reconsideration. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203.) Aside from the observation that the Code of Civil Procedure is inapplicable to administrative proceedings (see *Desai v. Metropolitan Sanitary District* (1984), 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045), we note that the threshold issue here is not whether the Electoral Board has *adopted* a rule regarding rehearings, but whether the Board has the *authority* to adopt such a rule. The resolution of that issue must be determined by reference to the statute from which the Board derives its authority.

*ployment Practices Comm'n* (1976), 65 Ill. 2d 108, 113, 357 N.E.2d 1154 (where the supreme court held that administrative agencies have no general or common law powers).

The clear import of these decisions is that in the absence of express statutory language, an administrative agency lacks jurisdiction to grant a rehearing or modify or alter its decisions. (See *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 1112, 420 N.E.2d 1043 (where the court held that because "administrative agencies are creatures of statute, they may allow rehearings or modify or alter their decisions only where authorized to do so by statute").) And, interestingly enough, this was also the position taken by the Chicago Board of Election Commissioners in *Delk v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 735, 445 N.E.2d 1232, where we stated, *in dicta,* that the Chicago Board of Election Commissioners has no authority to grant a rehearing requested on the basis of newly discovered evidence. 112 Ill. App. 3d at 739.

In *Delk,* the Board of Election Commissioners, through its general counsel, informed an unsuccessful objector that "no provisions existed for a motion to reopen the hearing," and that "all petitions for rehearing *** had been denied for want of jurisdiction." (Brief filed by the Board of Election Commissioners in *Delk,* at 7.) In its brief on appeal, the Board argued that its decision was "a final Order subject to Judicial Review under Section 10—10.1 of the Election Code," and that the Board never "reopen[ed] any case or consider[ed] additional motions after a decision was rendered or the matter [was] taken under advisement." Brief, at 15.[3]

Contrary to the position it has taken in this case, the Board vigorously argued in *Delk* that allowing rehearings after final decision would "deluge" the Board with rehearing petitions and would "defeat the entire purpose of expedited hearings and judicial review." (Brief at 15.) The Board quoted with approval the circuit court's holding in that case that "no provision in the Act provides for reopenings of hearings after final decisions have been made." Brief, at 15.

We do not suggest that the Board is estopped from adopting a different position in this appeal than it did in *Delk.* We note, however, that the Board has failed to articulate a convincing reason for its change of heart. Although defendants attempt to distinguish *Delk* on the ground that the rehearing in the case at bar was not based on newly discovered evidence, we believe that this is a distinction with-

---

[3]At oral argument in this case, counsel for the Board was unable to recall a single previous instance in which the Board had allowed a petition for rehearing.

out a difference. The issue is whether the Election Code authorizes rehearings for any purpose. In our judgment, it does not.

We find defendants' reliance on *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 472 N.E.2d 150, to be misplaced. In that case, a corporation applied to the La Salle County board for approval of a proposed site for a nonhazardous sanitary landfill. As the site was located in unincorporated La Salle County, such approval was required by the Illinois Environmental Protection Act. Ill. Rev. Stat. 1983, ch. 111½, par. 1039(c).

The county board appointed nine of its members to act as a hearing committee in the matter, and rules of procedure were adopted for the carrying out of the hearings. The hearing committee voted 8 to 1 to adopt the resolution submitted by the corporation. The full county board met on August 15, 1983, to consider the matter. By a 20 to 7 vote, the board rejected adoption of the minority report and adopted the majority report as the findings of the board, with two additional conditions. Subsequently, the corporation asked the county board to delete those conditions. On September 12, 1983, the county board first voted to suspend its procedural rule against reconsideration, then voted to delete the conditions added by the board at its previous meeting.

The issue presented on appeal was "whether fundamental fairness was violated by the allowance of reconsideration." (*Town of Ottawa,* 129 Ill. App. 3d at 125.) The court noted that the county board proceeded under Robert's Rules of Order, which allows suspension of procedural rules by a two-thirds vote. Such a vote was taken without objection on that ground by the municipalities concerned. The court then stated that "administrative bodies should be free to reconsider their decisions," because "[t]his is part and parcel of the preference for exhaustion of remedies at the administrative level." 129 Ill. App. 3d at 125.

In our judgment, the language on which defendants rely is *dicta.* The Environmental Protection Act does not purport to control whether a county board (or the governing body of a municipality, as the case may be) may reconsider or modify its decision regarding a proposed site location for a new regional pollution control facility. Indeed, different local governmental entities may have conflicting rules on reconsideration. In the case at bar, however, defendants readily admit that the Electoral Board's authority to rehear a decision must be derived originally from the Election Code itself and not from its own rules. For that reason, we believe that the opinion in *Town of Ottawa v. Pollution Control Board* simply does not support defendants' argument.

■ The Election Code provides that "a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision" by filing a petition with the clerk of the circuit court "within 10 days after the decision of the electoral board." (Ill. Rev. Stat. 1983, ch. 46, par. 10—10.1.) Defendants suggest that until a petition is filed, or the time for filing expires, whichever comes first, the Election Board "retains jurisdiction" over its decision and has the power to reopen or modify that decision, even in the absence of any statutory authority. Defendants cite no authority in support of this proposition and we are aware of none.

"An agency, being a creature of statute, has only those powers specifically conferred upon it," and has "no inherent power [for] amend[ing] or chang[ing] a decision it has made." (*Reiter v. Neilis* (1984), 125 Ill. App. 3d 774, 778, 466 N.E.2d 696.) Absent specific statutory authority, the Electoral Board lacked jurisdiction to consider Morrow's motion to vacate and for rehearing. See *Pearce Hospital v. Public Aid Comm'n* (1958), 15 Ill. 2d 301, 306, 154 N.E.2d 691.

Regardless of the desirability of conferring rehearing authority upon electoral boards, which is fairly debatable, it is apparent to us that the law as it now stands does not authorize such rehearings in election cases. Whether the law should be changed is a matter that should be addressed to the wisdom of the legislature.

■ The second principal issue in this appeal is whether *mandamus* will lie to expunge a void order entered by an electoral board. The Illinois Supreme Court has expressly held that a writ of *mandamus* may be issued by the circuit court to expunge a void order by an administrative agency. (*People ex rel. Illinois Highway Transportation Co. v. Biggs* (1949), 402 Ill. 401, 408, 84 N.E.2d 372; *People ex rel. Elmore v. Allman* (1943), 382 Ill. 156, 164, 46 N.E.2d 974.) Moreover, contrary to defendants' representations in their brief and at oral argument, writs of *mandamus* have been issued to expunge decisions which election boards lacked jurisdiction to render. *People ex rel. Martin v. White* (1946), 329 Ill. App. 81, 94-95, 67 N.E.2d 498.

In *White*, the appellate court held that where the circuit court had ordered the municipal election board of a village dissolved on the ground that the board was not lawfully constituted under the law, a subsequent decision of the board that a certain party ticket should not be placed on the ballot for the village election was invalid, and candidates on that ticket had the right to have their names placed on the ballot, and that right was enforceable by the circuit court in *mandamus* proceedings.

*People v. Schlaman v. Electoral Board* (1954), 4 Ill. 2d 504, 122

N.E.2d 532, cited by defendants, is inapposite. In *Schlaman*, the supreme court held that a decision of an electoral board is not reviewable by an original writ of *mandamus* unless the board acts in a clearly fraudulent or arbitrary manner. This case is not authority for the proposition that *mandamus* will not lie to expunge an order an electoral board lacks jurisdiction to enter.

Defendants also make a one-sentence argument that plaintiff is precluded from seeking *mandamus* because of *laches*, waiver, the "statute of limitations," and estoppel. We find no merit in any of these defenses.

■ The basis of plaintiff's complaint for a writ of *mandamus* was that the Electoral Board lacked jurisdiction to reconsider its January 13, 1988, decision. Jurisdiction over the subject matter cannot be waived, nor may a party be deemed estopped to raise lack of subject matter jurisdiction. (*Toman v. Park Castles Apartment Building Corp.* (1940), 375 Ill. 293, 302, 31 N.E.2d 299; *Volkmar v. State Farm Mutual Auto Insurance Co.* (1982), 104 Ill. App. 3d 149, 151, 432 N.E.2d 1149; *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 334-35, 224 N.E.2d 671.) We may add that plaintiff did object to the January 19, 1988, rehearing.

The 10-day period within which an aggrieved candidate or objector must file his petition for judicial review obviously bars an untimely petition only where the electoral board had the authority to render the decision in question. Here, the Board lacked such authority since it did not have the power to grant a rehearing.

■ The defense of *laches* is applicable in *mandamus* proceedings. (*Weisberg v. Byrne* (1981), 92 Ill. App. 3d 780, 416 N.E.2d 298.) To assert the defense of *laches*, a party must show both that there was unreasonable delay in bringing the action and that the delay materially prejudiced him. (*In re Adoption of Miller* (1982), 106 Ill. App. 3d 1025, 1031, 436 N.E.2d 611.) Here, defendant Morrow has shown neither.

Plaintiff filed his complaint for a writ of *mandamus* in the same week in which he received the Board's January 22, 1988, decision. We do not believe that this delay was unreasonable, nor do we find that defendant Morrow was prejudiced thereby. Morrow could have pursued his petition for judicial review of the January 13, 1988, decision independently of the *mandamus* complaint filed by plaintiff.

■ Finally, defendants argue, without citation to authority, that plaintiff's *mandamus* complaint was properly dismissed because he failed to join as parties defendant the State Board of Election Commissioners, the county clerk and the Chicago Board of Election Com-

missioners. We disagree.

Only those parties who have not performed a duty required by law are necessary parties to a *mandamus* proceeding. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 539, 332 N.E.2d 649.) In *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 29 N.E.2d 274, plaintiff sought a writ of *mandamus* against defendant, the Director of the Illinois Department of Public Works and Buildings, to compel him to institute eminent domain proceedings to ascertain the just compensation due plaintiff for damage done to his property.

On appeal, defendant contended that *mandamus* had been properly denied because plaintiff had failed to name the Governor, who apparently had the authority to sign the petition to determine plaintiff's damages, as a party defendant. The supreme court rejected this argument, stating:

> "The defendant's contention *** is of no avail. We can only assume that public officers will do whatever duty is required of them by law and that the Governor would sign the petition in a proceeding to ascertain the plaintiff's damages. Where, as here, there is no indication or proof that another officer refuses to do his public duty and his act is required in the proceeding sought to be instituted through *mandamus* brought against an officer who has failed to act, the former is not a necessary party in the *mandamus* suit. [Citations.]" 374 Ill. at 291.

Accord *Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 506, 430 N.E.2d 126.

Here, there is no suggestion that the State Board of Election Commissioners, the county clerk or the Chicago Board of Election Commissioners would refuse to implement a decision the Electoral Board makes pursuant to our disposition of this *mandamus* appeal. Under these circumstances, we do not believe that they were necessary parties to the *mandamus* action.

■ For the foregoing reasons, therefore, we hold that once an electoral board has issued a written decision on an objection to a statement of candidacy, the board lacks jurisdiction to permit a rehearing of that decision or entertain any motions to alter or modify that decision. The aggrieved party's remedy lies in the judicial review procedure specifically authorized by the Election Code. We hold further that *mandamus* will lie to expunge a void order or decision entered by an electoral board.

Additionally, it should be noted that while the ballots here have been printed with Morrow's name as a candidate, expunging the January 19 and 22 orders of the Board does not finally determine

whether his name should be removed. This is so because in addition to an emergency appeal of our decision, it appears that he has either or both of two procedures in the trial court to reverse the January 13 decision of the Board.

First, as pointed out above, Morrow has the right under section 10—10.1 of the Election Code to petition for review of the January 13 decision and, in fact, he filed such a petition. It appears, however, after the Board granted a rehearing of its January 13 decision and then reversed itself, Morrow's petition for review was dismissed with leave to reinstate. At oral argument in this court the parties were in agreement that the petition may be reinstated.

Second, issues raised in Morrow's counterclaim (particularly in paragraphs 13 and 14) concerned the validity of the January 13 order. The trial court, however, in its February 17, 1988, order dismissing plaintiff's *mandamus* action also found that the issues raised in the counterclaim were mooted because of that dismissal. The reversal of that order effectively revives the issues raised in the counterclaim which the trial court may consider on remand. We intimate no opinion regarding the merits of that counterclaim.

Accordingly, we reverse the order dismissing plaintiff's complaint for *mandamus* and remand the cause to the trial court with directions (a) to issue a writ of *mandamus* ordering the Board to expunge its decisions of January 19, 1988, and January 22, 1988, (b) to conduct further proceedings consistent with the content of this opinion, and (c) to stay the proclamation of any election result for the nomination in question until all remaining issues are finally determined.

The mandate is to issue upon the filing of this opinion.

Reversed and remanded with directions; writ awarded.

LORENZ, P.J., and MURRAY, J., concur.