# Illinois Official Reports

## Appellate Court

---

**Beyer v. Board of Education of the City of Chicago, 2019 IL App (1st) 191152**

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL BEYER, THEA KACHORIS-FLORES, DEBORA LAND, CHRISTOPHER MCCABE, JEZAIL JACKSON, and SIMEON HENDERSON, Plaintiffs, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, JANICE JACKSON, in Her Official Capacity as CEO of Chicago Public Schools, MARY ERNESTI, in Her Official Capacity as Director of Employment Engagement for Chicago Public Schools, and JENNIFER REGER, in Her Official Capacity as Hearing Officer in the Office of Employee Engagement for Chicago Public Schools, Defendants-Appellees (Michael Beyer, Christopher McCabe, and Jezail Jackson, Plaintiffs-Appellants). |
| District & No. | First District, Sixth Division<br>No. 1-19-1152 |
| Filed | December 27, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-14198; the Hon. Anna M. Loftus, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William J. Quinlan, Lisa H. Quinlan, Kenneth M. Sullivan, David E. Hutchinson, and Kamil Z. Merchant, of Quinlan Law Firm, LLC, of Chicago, for appellants. |

Ruth F. Masters, of MastersLaw, of Oak Park, for appellees.

| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Cunningham and Harris concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiffs Michael Beyer, Christopher McCabe, and Jezail Jackson appeal the circuit court's denial of injunctive and declaratory relief and a writ of *mandamus* related to the process used by defendants, the Board of Education of the City of Chicago (Board), Janice Jackson, Mary Ernesti, and Jennifer Reger, to suspend Beyer without pay from his position as principal of Ogden Elementary School and Ogden International High School. On appeal, plaintiffs contend that (1) the circuit court should have enjoined Beyer's unlawful suspension, (2) defendant Jackson, the chief executive officer of Chicago Public Schools (CEO Jackson), unlawfully conducted a rehearing of Beyer's presuspension hearing, and (3) coplaintiffs Christopher McCabe and Jezail Jackson[1] have standing as members of Ogden's local school council (LSC) and as parents of children who attend Ogden. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 Beyer had been a teacher and administrator in Chicago Public Schools since 2003 and became Ogden's principal in July 2015. In August 2018, Ogden's LSC voted to extend Beyer's contract through June 2023. Approximately two months earlier, in June 2018, the Board's inspector general issued a report concluding that Ogden staff improperly unenrolled students who took extended absences from school, which altered the school's attendance rate. The Board acted on the report and initiated termination proceedings against Beyer in November 2018. The substance of the report's allegations, which Beyer disputes, are not at issue in this appeal. Instead, this appeal concerns the process surrounding Beyer's termination—specifically, that Beyer participated in two presuspension hearings. The first hearing took place in November and December 2018, and the second hearing took place in January 2019.

¶ 4 On November 1, 2018, the Board sent Beyer a letter titled, "Re: Notice of Reassignment," stating that, effective that same day, Beyer was "removed from all duties and responsibilities as the principal of Ogden Elementary School and Ogden International High School." Beyer's reassignment was based on findings that he condoned or encouraged falsification of attendance records. Beyer was "reassigned home," where he would continue to receive his normal pay and benefits. Beyer was directed not to return to Ogden without written authorization and was required to immediately turn over all Board property, "such as school keys, laptops, cellular phone and other equipment." The Board also notified Beyer that CEO Jackson was considering

_____

[1]The coplaintiffs initially included other members of the Ogden LSC, but they were voluntarily dismissed from the case in the circuit court or are otherwise not part of this appeal.

a recommendation to terminate his employment. A presuspension hearing, which could result in a suspension without pay, was scheduled for November 15, 2018.

¶ 5     On November 14, 2018, plaintiffs filed a motion for a temporary restraining order and preliminary injunction, requesting that the court enjoin defendants from conducting the presuspension hearing. Plaintiffs cited a section of the Illinois Administrative Code that stated that a principal could be suspended without pay "in accordance with rules prescribed by the Board." 23 Ill. Adm. Code 51.35(b) (2012). However, defendants had not promulgated any written rules or procedures. As relief, plaintiffs requested an order enjoining defendants from: (1) terminating Beyer's employment without adequate due process of law, (2) suspending Beyer's pay without adequate due process of law, (3) conducting or holding any hearing until defendants established and promulgated rules to govern the conduct of the proceedings, and (4) conducting or holding any hearing until defendants provided Beyer with certain evidence and information. After a hearing, the court entered an order that any finding made by the presuspension hearing officer would be stayed for 10 business days.

¶ 6     Beyer's first presuspension hearing was held on November 15 and December 6, 2018. At the hearing, the hearing officer, Mary Ernesti, stated that "there are no written rules for the pre-suspension procedures." She also stated that the presuspension hearing was not a full evidentiary hearing and the purpose of the presuspension hearing was to demonstrate that there was "a factual basis to move forward with taking Principal Beyer out of paid status while his termination is being sought."

¶ 7     A third day of the hearing was scheduled for December 20, 2018, but did not occur. On December 10, 2018, plaintiffs filed a motion to terminate the presuspension hearing, asserting in part that defendants had not identified any rules for the presuspension hearing as required by law. Plaintiffs added that a resulting suspension without pay would be void. Plaintiffs urged the court to terminate the presuspension hearing process "so CPS can attempt to move forward with separate procedures prescribed by law." Plaintiffs also maintained that other aspects of the presuspension hearing deprived Beyer of his due process right to a fair and impartial tribunal. A hearing on plaintiffs' motion was set for January 11, 2019, and the parties agreed to advise the hearing officer to postpone the third date of the hearing.

¶ 8     As noted above, the third day of the hearing did not take place. On January 9, 2019, the Board's counsel informed Beyer's counsel that "[t]he prior pre-suspension hearing has come to an end." The Board's counsel further stated that the CEO planned to file amended dismissal charges and guidelines covering the presuspension process, and would "set a new pre-suspension date in the near future."

¶ 9     In the meantime, the Board authorized the CEO to establish protocols to suspend a teacher or principal without pay, and CEO Jackson issued "Guidelines Governing Pre-Suspension Hearings for Tenured Teachers and Contract Principals," with an effective date of January 23, 2019. On January 24, 2019, Beyer was notified that a second presuspension hearing was scheduled for January 31, 2019. CEO Jackson also issued amended dismissal charges, which added allegations that Beyer had engaged in an unauthorized disclosure of confidential information.

¶ 10     In a letter to the Board's counsel dated January 25, 2019, plaintiffs' counsel maintained that the Board's attempt to rehear and/or modify its previous decision was improper and requested that the Board cancel the second presuspension hearing. On January 30, 2019, plaintiffs filed an emergency motion for a temporary restraining order to enjoin the Board from

holding the second presuspension hearing. The circuit court was closed on January 30 and 31 because of extreme weather. The second presuspension hearing went on as scheduled on January 31.

¶ 11 The hearing officer, Jennifer Reger, issued a written memorandum of her findings on February 6, 2019. The hearing officer recalled that Beyer's counsel maintained that the second presuspension hearing was unlawful. As for the merits of the matter at hand, the hearing officer found that even without the evidence and testimony about the student attendance allegation, the amended dismissal charges provided cause to suspend Beyer without pay pending the outcome of a dismissal hearing. Subsequently, CPS sent a letter to Beyer informing him that based on the January 31 presuspension hearing, he would be suspended without pay effective February 22, 2019. Before it could go into effect, the suspension without pay was stayed by the circuit court.

¶ 12 On February 7, 2019, plaintiffs filed a "Motion to Declare Re-Hearing of Pre-Suspension Hearing as Unlawful, for Writ of Mandamus, and/or to Enjoin Defendants from Suspending Dr. Beyer Without Pay Pursuant to the Second Pre-Suspension Hearing and February 6, 2019 Notification of Suspension," which this court will refer to as the "motion to declare." Plaintiffs stated that an administrative agency may not hold a rehearing or modify or alter its decisions without express statutory language authorizing it to do so. Neither the School Code nor the Illinois Administrative Code included such language. Plaintiffs requested that the court enjoin defendants from suspending Beyer without pay pursuant to the unlawful rehearing, in addition to declaratory and *mandamus* relief.

¶ 13 Plaintiffs were also given leave to file a six-count second amended complaint. The first three counts of that complaint are not at issue in this appeal, so we only summarize counts IV, V, and VI. Count IV sought a declaratory judgment that the second presuspension hearing was unlawful because the rehearing exceeded defendants' statutory authority. Count V sought a temporary restraining order and preliminary injunction to enjoin defendants from terminating Beyer's employment without due process of law, suspending Beyer without pay in violation of Illinois law, and taking any further action in conjunction with the second presuspension hearing or notification of suspension without pay. According to the complaint, plaintiffs were likely to succeed on the merits of their claim because, without express statutory language, an administrative agency does not have jurisdiction to grant a rehearing or modify or alter its decisions. Count VI sought a writ of *mandamus*, stating in part that CEO Jackson had a clear duty to initiate presuspension proceedings only in accordance with the law.

¶ 14 Defendants filed a response to the motion to declare, asserting in part that the LSC plaintiffs did not have standing. Defendants stated that the LSC plaintiffs had no legally cognizable interest in Beyer's removal and nothing in the School Code gives LSC members the authority to object to the CEO's removal of a principal. Further, the Board did not rehear or modify any final decision, and CEO Jackson had statutory authority to suspend Beyer without pay.

¶ 15 In reply, plaintiffs asserted in part that the issue of the LSC plaintiffs' standing was not properly before the court because it was not raised in a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)). That aside, the LSC plaintiffs had standing because Beyer's unlawful suspension and termination would infringe on the LSC's statutory authority to select the principal.

¶ 16 At a hearing on April 25, 2019, plaintiffs' counsel asserted that the operative decision after the first hearing was a "decision not to suspend [Beyer], and a decision not to suspend [Beyer]

without pay." On the standing issue, defendants' counsel noted that, as for raising standing, they had not been able to answer or otherwise plead to the case yet and had not been ordered to do so. According to the court, for plaintiffs to assert that defendants could not raise a standing argument "is kind of disingenuous because you haven't allowed them opportunity to and you're asking me for judgment right away." The court further stated defendants had not had an opportunity to file an answer because an amended complaint had been proposed.

¶ 17    On May 23, 2019, the circuit court issued a 29-page written order that dismissed all but one count (alleging a violation of the Illinois Whistleblower Act) of plaintiffs' second amended complaint. Again, we only summarize the court's order as to counts IV, V, and VI. The court stated that, as a result of extensive briefing and oral argument, the court could address both the motion to declare and the underlying viability of much of the case itself. The court further stated that in addition to a preliminary injunction, the motion to declare requested relief as to the ultimate merits of the case, which pushed the motion "beyond the scope of a preliminary injunction, under which the Court may *not* decide controverted rights or the merits of the case." (Emphasis in original.) Other than the request for a preliminary injunction, the court treated the rest of the motion as a motion for judgment on the pleadings. The court also noted that the parties expected that the ruling on the motion to declare would be dispositive.

¶ 18    Turning to the complaint, the court stated that the stand-alone count for an injunction (count V) was not a proper cause of action. Thus, the court interpreted the complaint as requesting a preliminary injunction on count IV, which sought a declaratory judgment that the second presuspension hearing was void. The court then denied the request for a preliminary injunction because Beyer did not demonstrate an irreparable injury and had an adequate remedy at law. The court explained that Beyer's harm was a suspension without pay, which related to monetary compensation and could be addressed with damages. The court did not consider whether Beyer had established a likelihood of success on the merits.

¶ 19    The court further stated that the same question was presented by the requests for a declaratory judgment and writ of *mandamus*: whether the second presuspension hearing was void. In finding that the second presuspension hearing was not void, the court stated that the first presuspension hearing was terminated without a decision. Thus, the second presuspension hearing was not an impermissible rehearing because there was no decision to rehear. The hearing officer never made a recommendation to the Board and could not have because the hearing was terminated before the matter was fully heard. The court also characterized Beyer's argument as "[smacking] of bad faith." Beyer had demanded the issuance of written guidelines as a precondition to a presuspension hearing, and the Board issued guidelines accordingly.

¶ 20    Turning to the LSC plaintiffs' standing, the court rejected the argument that the defendants should have raised standing by affirmative defense or in a motion to dismiss under section 2-619 of the Code. The court stated that defendants raised standing in their response to the motion to declare "because the Court has, for months now, asked the parties to address numerous jurisdictional concerns. *** Plaintiffs can hardly claim to be taken by surprise." The court also noted that the time to answer or file a responsive pleading had been "stayed numerous times." Addressing the substance of the standing issue, the court found that the LSC plaintiffs did not have standing as members of the Ogden LSC or as Ogden parents. The issue of whether Beyer would be paid during his termination proceedings "has no appreciable impact on parents, students, or other Ogden community members, much less a legally cognizable one."

¶ 21    The following is a partial summary of the court's order: (1) The motion to declare was denied to the extent it sought a preliminary injunction. (2) The LSC plaintiffs were dismissed with prejudice under section 2-619 of the Code because they did not have standing. That dismissal was a final and appealable order and there was "no just reason for delaying enforcement or appeal hereof." (3) To the extent the motion to declare sought judgment on the pleadings as to counts IV, V, or VI, the motion to declare was denied. (4) On the court's own motion, counts IV, V, and VI were dismissed with prejudice pursuant to section 2-619 of the Code, "as the core legal theory is not meritorious." Further, "[t]his is a final and appealable order, and there is no just reason for delaying enforcement or appeal hereof."

¶ 22    As a procedural note, the circuit court stated that ordinarily, the denial of a motion for judgment on the pleadings—which most of the motion to declare was construed to be— normally would not result in dismissal of the claims. The court found that, because it denied judgment on the pleadings on the basis that the underlying claims were not legally viable, it did not make sense to leave the claims outstanding in anticipation of a *pro forma* motion to dismiss, especially where the parties expressed a preference for a rapid adjudication. The court cited section 2-615(d) of the Code (*id.* § 2-615(d)), which states that after ruling on a motion, a court "may enter appropriate orders either to permit or require pleading over or amending or to terminate the litigation in whole or in part." The court then found that, based on the legal ruling that the second presuspension hearing was not improper, the court could separately dismiss counts IV, V, and VI of the complaint under section 2-619 of the Code (*id.* § 2-619).

¶ 23    After a status hearing, the court lifted the previously entered stay of Beyer's suspension without pay. Plaintiffs filed a notice of appeal under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) and Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 24                                    II. ANALYSIS
¶ 25                                    A. Jurisdiction
¶ 26    As an initial matter, the parties disagree about which Illinois Supreme Court Rule gives this court jurisdiction. Plaintiffs contend that we have jurisdiction under Rule 307(a), which allows interlocutory appeals of orders that grant or refuse injunctions. Defendants maintain that we only have jurisdiction under Rule 304(a), which allows appeals when there is a final judgment as to fewer than all of the parties or claims and the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. In a motion filed while this case was pending on appeal, defendants sought to dismiss the appeal, to the extent that it asserted jurisdiction under Rule 307(a), but acknowledged that the appeal could still proceed under Rule 304(a). After plaintiffs responded, this court entered an order stating that we clearly had jurisdiction over the appeal and defendants' motion was only relevant to set a briefing schedule and define the appropriate supporting record. Further, the only remaining brief was plaintiffs' reply brief, and the record that had been filed appeared to contain what was needed to decide the appeal. We denied defendants' motion as moot but without prejudice to defendants' right to address any jurisdictional issues to the panel to whom the case was assigned.

¶ 27    In their briefs, the parties reassert their positions on the court's jurisdiction, with plaintiffs contending that we have jurisdiction under Rule 307(a) and defendants maintaining that jurisdiction is only proper under Rule 304(a). It is true that before considering the merits of an appeal, we must determine whether we have subject-matter jurisdiction to do so. *Santella v.*

- 6 -

*Kolton*, 393 Ill. App. 3d 889, 901 (2009). However, we do not need to decide whether we indeed have jurisdiction under Rule 307(a) because, even if we do not, we can still review the appeal under Rule 304(a). The order that is on appeal from the circuit court contains the necessary Rule 304(a) language to provide jurisdiction. See *id.* at 904-05 (even though there was no jurisdiction under Rule 307(a)(1), the appellant could seek a Rule 304(a) finding from the trial court, which would provide jurisdiction over the appeal); *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 418 (1991) (jurisdiction was not available under Rule 307(a), but a Rule 304(a) finding would have provided jurisdiction). Moreover, other than to set a briefing schedule and define the appropriate record on appeal, the parties do not articulate a reason why we should decide whether Rule 307(a) applies. We will not consider questions that are not essential to a determination of a case. *Nameoki Township v. Cruse*, 155 Ill. App. 3d 889, 894-95 (1987). It is sufficient for our purposes that we have jurisdiction under Rule 304(a).

¶ 28                                    B. The Second Presuspension Hearing

¶ 29        Plaintiffs contend that the circuit court incorrectly denied the motion to declare to the extent it sought a preliminary injunction. Plaintiffs also assert that the circuit court incorrectly dismissed their requests in the complaint for declaratory, injunctive, and *mandamus* relief (counts IV, V, and VI). In our view, both the denial of the preliminary injunction and the dismissal of the three counts of the complaint hinge on the same issue—whether holding the second presuspension hearing was unlawful. If holding the hearing was lawful, then there is no likelihood of success on the merits for the purposes of a preliminary injunction. See *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992) (among the factors for a preliminary injunction is a likelihood of success on the merits). There would also be no need for a declaratory judgment that the hearing was unlawful or a writ of *mandamus* to expunge the hearing.

¶ 30        Before we address plaintiffs' arguments, we comment on the circuit court's unusual procedural maneuver. To review, the court construed plaintiffs' motion to declare as a motion for judgment on the pleadings, other than the portions that sought a preliminary injunction. After denying plaintiffs' motion for judgment on the pleadings based on a legal ruling that the second presuspension hearing was not improper, the court then dismissed counts IV, V, and VI of the second amended complaint under section 2-619 of the Code on its own motion, apparently in the interest of judicial economy.

¶ 31        A judgment on the pleadings under section 2-615(e) and a section 2-619 motion to dismiss are not entirely equivalent but may overlap in certain circumstances. A motion for judgment on the pleadings "is like a motion for summary judgment limited to the pleadings" and is proper "where the pleadings disclose that there is no genuine issue of material fact and *** the movant is entitled to judgment as a matter of law." *Terraces of Sunset Park, LLC v. Chamberlin*, 399 Ill. App. 3d 1090, 1093 (2010). The motion "tests the sufficiency of the pleading as a matter of law." *Murcia v. Textron, Inc.*, 342 Ill. App. 3d 433, 436 (2003). Also, a motion under section 2-615 only alleges defects on the face of the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484-85 (1994). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises certain defects or affirmative defenses that defeat the plaintiff's claim. *Murcia*, 342 Ill. App. 3d at 436. Generally, a section 2-619 motion can attack a defect on the face of the pleading, but it should be combined with a ground based on matter not appearing

of record. *Nickum*, 159 Ill. 2d at 485. In practice, however, courts have allowed section 2-619 motions even though a defect on the face of the pleadings might be the only ground raised. *Id.* Thus, there is "some degree of overlap between motions to dismiss brought under section 2-615 and those brought under section 2-619." *Id.* Where an affirmative matter that avoids the legal effect or defeats the claim is apparent on the face of the pleading (which includes attached exhibits (*Thompson v. N.J.*, 2016 IL App (1st) 142918, ¶ 28)), a motion to dismiss is "peculiarly within the area of confluence between section 2-615 and section 2-619(a)(9)." *Nickum*, 159 Ill. 2d at 486. Here, moving from denying judgment on the pleadings to dismissing three counts of the complaint under section 2-619 was atypical, but acceptable in this unique instance. Plaintiffs' claims all hinged on a single legal issue that could be resolved on the face of the complaint, including the attached exhibits: whether the second presuspension hearing was unlawful. See *id.* at 487 (issue of whether a statute barred recovery could be raised in a section 2-615 or 2-619(a)(9) motion).

¶ 32 Turning to the merits of plaintiffs' arguments, we review a dismissal under section 2-619 of the Code *de novo*. *Thompson*, 2016 IL App (1st) 142918, ¶ 26. Further, we may affirm the judgment of the trial court on any basis in the record. *Hoffman v. Northeast Illinois Regional Commuter R.R. Corp.*, 2017 IL App (1st) 170537, ¶ 42.

¶ 33 Plaintiffs contend that CEO Jackson did not have the authority to conduct a rehearing or modify or alter her decision to terminate the first presuspension hearing. According to plaintiffs, when CEO Jackson ended the first presuspension hearing, she confirmed Beyer's right to continued employment with pay pending the termination proceedings. Plaintiffs argue that, after that decision was made, the School Code did not give CEO Jackson the authority to conduct a rehearing. Plaintiffs assert that if presuspension hearings could be reinitiated, there would be no end to the proceedings.

¶ 34 "[A]dministrative bodies have only such powers as are conferred upon them by statute or ordinance." *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 129 (1976). Since an administrative agency is a creature of the legislative body from which it derives its existence and authority, any acts or orders that are unauthorized by the enabling statute or ordinance are void. *Id.* The applicable statute here is section 34-85 of the School Code, which states that a principal employed by the Board may only be removed for cause. 105 ILCS 5/34-85(a) (West 2018). Section 34-85 also states that pending a dismissal hearing, "the general superintendent or *** her designee may suspend the *** principal charged without pay in accordance with rules prescribed by the board, provided that if the teacher or principal charged is not dismissed based on the charges, he or she must be made whole for lost earnings, less setoffs for mitigation." *Id.* § 34-85(a)(2). Section 34-85 of the School Code does not set out additional details about presuspension hearings.

¶ 35 Unless authorized by statute, an administrative agency may not grant a rehearing or modify or alter its decisions. See, *e.g.*, *Pearce Hospital Foundation v. Illinois Public Aid Comm'n*, 15 Ill. 2d 301, 307 (1958); *Village of Downers Grove v. Illinois State Labor Relations Board*, 221 Ill. App. 3d 47, 57 (1991). Section 34-85 of the School Code does not mention rehearings, so the question here is whether CEO Jackson made a decision when she ended the first presuspension hearing such that a rehearing would not be permitted.

¶ 36 In three cases summarized below, the rule against rehearings applied after an agency made a decision that affected the parties' rights. In *Pearce Hospital Foundation*, 15 Ill. 2d at 302-03, a doctor and hospital were removed from a medical aid program and later petitioned a

commission to be reinstated. The court found that although the decision to remove the doctor and hospital "was informal in nature," it was still "a final disposition of the [plaintiffs'] rights and privileges" and a final administrative decision. *Id.* at 306. As a result, the commission could not entertain the petition for reinstatement. *Id.* at 307. In *Village of Downers Grove*, 221 Ill. App. 3d at 56, the Illinois State Labor Relations Board determined the composition of a bargaining unit and a village contended that the board could reconsider its determination. The court found that the board properly refused to reconsider the determined bargaining unit, noting that "[t]he issue of whether an agency may reconsider its decision is not determined by the existence of a final order, but whether the agency has authority conferred by the statute to reconsider its decisions." *Id.* at 56-57. In *Caldwell v. Nolan*, 167 Ill. App. 3d 1057, 1059 (1988), the Chicago Board of Election Commissioners issued a decision that ordered a candidate's name to be removed from the ballot. The candidate filed a motion to vacate the decision and for a rehearing. *Id.* The court stated that, without specific statutory authority, the board did not have jurisdiction to consider the candidate's motion to vacate and for rehearing. *Id.* at 1065. In *Pearce Hospital Foundation*, *Village of Downers Grove*, and *Caldwell*, an agency could not rehear or reconsider a decision that affected the parties' rights: ending participation in a program, identifying a bargaining unit, and removing a candidate from the ballot.

¶ 37 In contrast, in *Carter v. State Board of Education*, 90 Ill. App. 3d 1042 (1980), an agency was allowed to restart a dismissal procedure after a first round of the procedure ended prematurely. There, a board of education started the process to dismiss a teacher and suspended him pending a hearing. *Id.* at 1044. In the meantime, changes were made to the statute that addressed teacher dismissals. *Id.* The teacher demanded reinstatement and suggested that the board could proceed under the new version of the statute. *Id.* The board restarted the process under the new version of the statute, and eventually the teacher was discharged. *Id.* at 1044-45. The court found that, once the teacher asked to proceed under the new procedure, the board was correct to dismiss the previous charges and "was free to start over again the correct way." *Id.* at 1046. Further, the dismissal of the initial charges was neither an acquittal nor "a finding that the suspension was justified." *Id.* Thus, in *Carter*, where no decision had yet been made on the merits of the charges, an agency could end a dismissal proceeding and start over again under a new procedure.

¶ 38 Defendants' actions here are akin to the board's actions in *Carter*. CEO Jackson did not make a decision about Beyer's right to be paid when the first presuspension hearing ended. After two out of three days of the hearing, the Board's counsel informed plaintiffs' counsel that "[t]he prior pre-suspension hearing has come to an end." Further, CEO Jackson planned to file amended dismissal charges, issue guidelines for the presuspension hearing, and set a new date for a hearing in the near future. The e-mail does not state that CEO Jackson or her designee determined that Beyer would or would not be paid during his suspension. As in *Carter*, defendants permissibly ended the presuspension hearing early and then started over under a new procedure. No decision was made that affected the parties' rights. Our supreme court has also noted a "marked difference in reserving for future decision a matter which has not been determined but remains open for future adjudication"—which is permitted—and "a general order purporting to reserve jurisdiction over a cause when an order has been entered covering and adjudicating all matters in issue"—which is not permitted. *Trigg v. Industrial Comm'n*, 364 Ill. 581, 588 (1936). Ending the first presuspension hearing before it was

- 9 -

complete and setting a new date was equivalent to the lawful act of "reserving for future decision a matter which has not been determined." *Id.*

¶ 39    We also note that plaintiffs themselves requested that the presuspension hearing start over under a different procedure. Before the first presuspension hearing, plaintiffs filed a motion for a temporary restraining order and preliminary injunction, requesting in part that the court enjoin defendants from holding the presuspension hearing "until Defendant establishes and promulgates rules to govern the proceedings" and addresses other due process concerns. In January 2019, CEO Jackson issued written guidelines for presuspension hearings, and the second presuspension hearing followed. Plaintiffs did not assert that Beyer should not be subjected to a presuspension hearing at all—just that it conform to certain procedural standards. Plaintiffs received what they requested: written rules. Plaintiffs should not be allowed to escape a suspension without pay altogether because the Board and CEO Jackson did as they were asked. See *Carter*, 90 Ill. App. 3d at 1045 (teacher could not complain about delay in implementing new dismissal proceedings where he objected to going ahead under an old procedure).

¶ 40    Also buttressing our conclusion is that, if the first presuspension would have been void without written rules, which was a position taken by plaintiffs in the circuit court, the remedy would have been another hearing. See *Taylor v. Dart*, 2017 IL App (1st) 143684-B, ¶ 46 (where hearing was not conducted in compliance with applicable statute, remedy was for board's decision to be vacated and matter remanded for a new hearing); *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597, 603 (2000) (where commission exceeded authority under applicable statute when it decided the case, remedy was remand so matter could be reset for another full hearing). That the remedy for a void hearing is another hearing further underscores that defendants acted properly in holding a second presuspension hearing. We take no position on whether what actually happened at the second hearing met the requirements of due process because that issue is not before us.

¶ 41    Because holding the second presuspension hearing was lawful, the circuit court properly dismissed counts IV, V, and VI of plaintiffs' second amended complaint. In the same vein, because there is no likelihood of success on the merits of plaintiffs' claim that holding the second presuspension hearing was unlawful, the circuit court properly denied a preliminary injunction.

¶ 42                                   C. Standing

¶ 43    Next, plaintiffs contend that the LSC plaintiffs (Christopher McCabe and Jezail Jackson) have standing to bring the claims in the second amended complaint. Plaintiffs assert that, as a threshold matter, defendants did not properly raise their standing argument. Plaintiffs further argue that, as LSC members, the LSC plaintiffs face a cognizable injury because CEO Jackson's unlawful decision to suspend Beyer without pay would infringe on the LSC's statutory authority to select the school's principal. Plaintiffs also maintain that the LSC plaintiffs have standing as parents of children attending Ogden because they would lose a skilled administrator to an unlawful administrative action.

¶ 44    The doctrine of standing is designed to preclude those with no interest in a controversy from bringing suit and assures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Lack of standing is an affirmative defense that is the defendant's burden to plead and prove (*Lebron*

*v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010)) and may be raised in a motion for involuntary dismissal under section 2-619 of the Code. *DeWoskin v. Loew's Chicago Cinema, Inc.*, 306 Ill. App. 3d 504, 512-13 (1999).

¶ 45    While the issue of standing will be forfeited if not raised in a timely manner in the trial court (*Lebron*, 237 Ill. 2d at 252-53), we decline to find forfeiture here. As the circuit court noted, defendants' time to answer or file a responsive pleading was "stayed numerous times." Defendants raised standing in their response to the motion to declare, as apparently requested by the circuit court. Under the circumstances here, where the time to answer was stayed and defendants promptly raised standing when given the opportunity, defendants have not forfeited the issue.

¶ 46    Turning to the substance of the matter, standing requires only some injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The claimed injury, whether actual or threatened, must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Id.* at 492-93. Defendants suggest that plaintiffs must also show that a statute implies a private right of action, but that test is not part of the standing analysis in Illinois. See *Noyola v. Board of Education of the City of Chicago*, 227 Ill. App. 3d 429, 432 (1992) ("the criteria of a private cause of action *** [are] inapplicable to standing requirements under Illinois law"). The issue of standing is reviewed *de novo*. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004).

¶ 47    Turning to the causes of action alleged here, the party requesting a declaratory judgment must possess some personal claim, status, or right that is capable of being affected by the grant of such relief. *Glisson*, 188 Ill. 2d at 221. To have standing to seek an injunction, the complaining party must establish "a clearly ascertainable right or interest that needs protection." (Internal quotation marks omitted.) *Cedarhurst of Bethalto Real Estate, LLC v. Village of Bethalto*, 2018 IL App (5th) 170309, ¶ 28. The party must claim injury to "a substantive interest he possesses which is recognized by statute or common law." (Internal quotation marks omitted.) *Id.* Further, the injury must directly impact the party's property or rights and cannot be abstract. *Id.* The LSC plaintiffs do not appear in the count seeking a writ of *mandamus*.

¶ 48    As noted above, it was asserted that the LSC plaintiffs would be injured because having their chosen principal removed would infringe on the LSC's statutory authority to select the principal. Yet even though the LSC selects the principal, an LSC does not control a principal's dismissal. Section 34-2.3 of the School Code, which states that an LSC selects a principal, also provides that the principal can be removed for cause "in the manner provided by Section 34-85 [of the School Code]." 105 ILCS 5/34-2.3(2) (West 2018). Section 34-2.3 also states that "[n]o person shall be directly selected, listed as a candidate for, or selected to serve as principal *** (i) if such person has been removed for cause from employment by the Board." *Id.* The School Code gives the Board authority to dismiss a principal. Nothing in the School Code gives an LSC the right to protect a principal from that dismissal.

¶ 49    As another injury, plaintiffs assert that the LSC plaintiffs have standing as parents because they risk losing a skilled administrator who can navigate the issues that follow Ogden's merger with another school. "[A] party cannot gain standing merely through a self-proclaimed interest or concern about an issue, no matter how sincere." *Glisson*, 188 Ill. 2d at 231. Further, even if plaintiffs were correct and there should not have been a second presuspension hearing, that

outcome would not redress the LSC plaintiffs' stated injury. Beyer would not return to Ogden. As of November 1, 2018, Beyer was "reassigned home," directed not to return to Ogden, and required to turn over all Board property. Undoing the second presuspension hearing could allow Beyer to be paid while awaiting his dismissal hearing, but he could not participate in Ogden's day-to-day operations in any way. Defendants have met their burden to show that the LSC plaintiffs do not have standing.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.